## PITTSBURGH, CINCINNATI, CHICAGO AND ST. LOUIS RAILROAD COMPANY *v.* BOUGHTON.

### [No. 11,594. Filed February 19, 1924.]

1. RAILROADS.—*Res Ipsa Loquitur.—When Applicable.—*Where an injury was received by a pedestrian while walking near a railroad track, resulting from a derailed car striking him, the doctrine of *res ipsa loquitur* is applicable, since, in the ordinary course of things, a derailment would not happen if the railroad had used proper care. p. 133.

2. RAILROADS.—*Res Ipsa Loquitur.—Instruction.—*In an action for personal injuries received by a pedestrian while walking alongside a railroad track, resulting from a derailed car striking him, an instruction applying the doctrine of *res ipsa loquitur* was proper, although one paragraph of the complaint charged specific acts of negligence, if another paragraph charged general negligence. p. 133.

3. RAILROADS.—*Pedestrian Using Right of Way.—Injury to.— Instruction.—Statute.—*In an action for injuries to a pedestrian struck by a derailed car while walking along a track on the railroad right of way, the case being tried on the theory that the pedestrian, at the time of the injury, was using a public street, an instruction that the strip of the right of way on which the pedestrian was walking at the time of the injury was not a public street, notwithstanding the public's continuous use thereof, unless it served to connect a street or highway on each side thereof, referring to §5244 Burns 1914, *held* not applicable to the evidence. p. 139.

4. TRIAL.—*Instructions.—Error in.—Curing by Other Instructions.—*The error in giving an erroneous instruction is not cured by giving other instructions in conflict therewith, especially where the effect would be to confuse the jury and leave it in doubt as to which instruction should be followed. p. 139.

5. NEGLIGENCE.—*Res Ipsa Loquitur.—Not Applicable to Proximate Cause.—*The rule of *res ipsa loquitur* applies to the question of negligence, but it is not applicable to the question of proximate cause. p. 140.

From Clay Circuit Court; *Thomas W. Hutchison,* Judge.

Action by Charles E. Boughton against the Pittsburgh, Cincinnati, Chicago and St. Louis Railroad Company. From a judgment for plaintiff, the defendant appeals. *Reversed.*

*McNutt, Wallace, Harris & Randel,* for appellant.

*Hottel & Patrick* and *Rawley & Baumunk,* for appellee.

MCMAHAN, J.—Complaint by appellee in two paragraphs to recover damages for personal injuries alleged to have been received by him by reason of the negligence of appellant. The first paragraph alleges in general terms that appellant negligently operated its railroad and that by reason thereof one of its cars, which had been left standing on a switch east of Lincoln Street in the city of Brazil. was thrown or pushed off the track and struck appellee as he was traveling on Lincoln Street, thereby injuring him. The second paragraph alleges that he was walking east on what was called Railroad Street at the time of the accident and that when he reached a point near the intersection of Railroad and Lincoln Streets he was negligently run into, struck and injured by one of appellant's cars; that appellant negligently suffered one of its cars to become out of repair and negligently ran such car so that it struck and threw the car on the switch off the track into Railroad Street against appellee, thereby injuring him. Both paragraphs alleged that appellants railroad crossed Lincoln Street and running westwardly therefrom appellant maintained several tracks one of them running along the side of Railroad Street. The general location of the streets and surroundings is shown by the following plat:

The alleged Railroad Street is immediately north of the team track as located on the above plat and extends west from Lincoln to Depot Street. There was a trial by jury which resulted in a verdict and judgment for appellee. Appellant contends the court erred in over-

ruling its motion for a new trial, on account of the giving of instructions Nos. 1, 4, 5, 7 and 10 requested by appellee, and Nos. 21 and 24 given by the court on its own motion.

There is evidence tending to establish the following facts: On and prior to May 11, 1920, appellant owned and operated a line of railroad through the city of Brazil. Its right of way in said city was crossed by Depot and Lincoln Streets. At the intersection of the right of way and Lincoln Street, and for some distance both east and west thereof, appellant maintained four tracks on its right of way, the most northerly one being known as "the team track," the next to the south being the north main, the next south main and the most southerly a switch or passing track. For many years there had been a strip of ground about thirty feet wide extending east from Depot Street to Lincoln Street and lying between the team track and the property north of the right of way. Appellant's right of way, including the so-called Railroad Street, is substantially 100 feet wide. The strip of land north of the team track, which appellee alleges is Railroad Street, had for many years been used by the public for the purpose of reaching the team track in order to load and unload freight. There is some evidence that people traveled over this strip at times other than when loading or unloading freight and not in connection with any business with the railroad. Appellee, on said day, was chief of the fire department of the city of Brazil, and about 6 p.m. was on his way from his home to the fire station, and, in doing so, walked easterly from Depot Street to Lincoln over said strip immediately north of the team track. At this time, there were two freight cars on the team track east of Lincoln Street. When appellee reached a point about twenty feet from Lincoln Street, he heard a crash and looking to the east saw the first

car on the team track moving toward him.  He saw the east end of this car leave the tracks and swing around to the northwest.   When he heard the crash and saw the car swing to the north and west across Lincoln Street, he started to run northeast so as to get into Lincoln Street.   When he got to the north side of this strip of land and the west side of Lincoln Street, he saw the derailed car was going to strike him.   He threw his hand up against the car and swung himself around the north end of it and was struck and injured. The car moved about twenty feet further west and turned over.

Instruction No. 1 given at the request of appellee is as follows:   "In all cases of this character there must be reasonable evidence of the negligence of the defendant, but where the thing responsible for the injury is shown to be under the management of the defendant or its servants and the accident itself is such as, in the ordinary course of things, does not happen if those who have the management used proper care, it affords reasonable evidence, in the absence of explanation by the defendant that the accident arose from want of care on its part."

Appellant contends that the giving of this instruction was error because it applies the rule of *res ipsa loquitur* to a state of facts not warranted by the evidence.   Its contention is that his act in running and throwing his hand against the car raised the question of contributory negligence, and that, where the evidence shows that the injury might as well have happened by reason of the negligence of the injured party, the rule does not apply.   In this connection, it must be remembered that appellee was traveling east about twenty feet west of Lincoln Street when he heard a noise and saw the east end of the derailed car swing around to the north and west across Lincoln Street and

rapidly moving toward him in such a position as to prevent him reaching Lincoln Street without danger of being injured.    True, he might have run north and gotten on the lot north of this strip off of Railroad Street out of the way of the moving car, but he was required to act instantly as he was in imminent danger.    The jury was fully instructed on the question of contributory negligence.    It was correctly told that appellee could not recover in any event if the jury found he was guilty of any negligence which proximately contributed to his injury.

It is also contended that the instruction assumes that the derailing of the car was responsible for the injury. When we consider the instruction as a whole, in connection with all the other instructions, it is perfectly clear that the expression relating to "the thing responsible for the injury" being under the management of the defendant, had reference to the accident which caused the car to leave the track and not to the injury of appellee.    It would have been better if the court had omitted the word "injury" and used in its place the word "accident" thus specifically indicating that he meant to refer to the thing which caused the car to be derailed.    But when this instruction is considered with the other instructions on negligence, contributory negligence and proximate cause, its giving was not reversible error.

The fact that the second paragraph of complaint charged specific acts of negligence did not make the giving of this instruction reversible error.    The instruction was applicable to the evidence and to the issues presented by the first paragraph.    In *Feldman* v. *Chicago Railways Co.* (1919), 289 Ill. 25, 124 N. E. 334, 6 A. L. R. 1291, two paragraphs of the complaint contained usual charges of negligence, and two contained specific charges of negligence.    It was there conceded that the

rule was not applicable to the paragraphs charging specific acts of negligence. The court, however, held the doctrine applied where there was another paragraph charging negligence generally. To the same effect see *Chicago Union Trac. Co.* v. *Giese* (1907), 229 Ill. 260, 82 N. E. 232.

In the instant case the car was under the management and control of appellant. Its derailment was such as in the ordinary course of things would not have happened if appellant had used proper care. The derailment, itself, therefore, affords reasonable evidence, in the absence of an explanation by appellant, that it arose from want of proper care.

Appellant made no attempt to explain the cause of the derailment of the car. Its defense was (1) that the so-called Railroad Street was not a street but was a part of its right of way and was used by the public only in loading and unloading freight on or from appellant's cars, and that appellee, if injured, was injured while traveling along and on the right of way under such conditions as to relieve it from liability on account of mere negligence, and (2) that appellee had reached Lincoln Street, out of the path of the derailed car, before the accident and that he was not struck or injured. The court fully and at great length correctly instructed the jury as to the contentions of appellant and there is no ground for the contention that the jury was confused or misled by said instruction.

The court, at the request of appellant, charged the jury that if the place where appellee was traveling was not a public street but was a part of appellant's right of way and that if appellee was injured while upon its right of way and before he reached Lincoln Street, he could not recover. The jury was clearly and specifically instructed that if appellee was injured while upon the right of way at a point west of Lincoln Street, he could

not recover unless it found that the place where he was traveling was a public street.    Under these instructions, before the jury could return a verdict for appellee, it was required to find that he was injured on a public street.

The evidence fails to show when the railroad was located or constructed at its present location.    We may assume that it was about April 22, 1852, as, on that day, the owner of the land immediately north of the railroad and lying between Franklin and Meridian Streets as shown on the above plat, recorded a plat in the recorder's office, showing the subdivision of the land into lots.    The north and south streets and alleys, as located on this plat, extend from the north to the railroad right of way.    One hundred feet north of the railroad, it shows a street sixty feet wide paralleling the railroad.    The south line of the lots was indicated as being the north line of the railroad right of way. The first lot west of Franklin Street extending west 120 feet was marked "Depot Lot" and was immediately north of what on this plat indicated the location of the railroad.    Later, the owner of this subdivision sold and by deed conveyed the lot immediately north of the railroad and east of Lincoln Street and also all the lots immediately north of the railroad and between Lincoln and Meridian Streets, and, in the deeds, stated that these lots lay "on the railroad fronting the switch," and were "bounded on the south by the railroad." This plat does not indicate the width of the right of way or whether any part of the land indicated as being railroad property ever belonged to the party making this plat.    But in April, 1854, he sold the land south of the railroad.    The land immediately east of the above subdivision and extending south of the railroad was platted in September, 1856, and the part occupied by the railroad was marked "Railroad 100 feet wide."

The public authorities never made any improvements or did any work on that part of the right of way which appellee calls Railroad Street. The railroad, however, when necessary, unloaded stone and cinders on this strip so that it could be used by those desiring to reach the team track. In 1906, the city council, on petition of certain property owners, ordered Depot Street improved with a brick pavement from the north line of the railroad right of way to a certain street south of the railroad, and an assessment was levied against the right of way on each side of Depot Street to a distance of 150 feet. This assessment, without any objection being made, was paid by the railroad. Sidewalks were constructed on both sides of Franklin Street in 1906, and the railroad was assessed for the costs of such sidewalks across its right of way at that point. The railroad leased narrow strips of land on the north side of its right of way, and on both sides of Franklin Street, to owners of the land north of the right of way for storing lumber and other material. It also constructed a sidewalk from Depot Street east to Meridian Street. The buildings between Meridian and Lincoln Street and immediately north of the railroad fronted on a street north of the railroad. When the owner of the storage house wanted to load or unload a car on the team track, he would erect a runway of plank from the storage house to the car for that purpose. The same thing was done by those using the building east of Lincoln Street marked "Ice house" on the plat.

As before stated, each paragraph of complaint alleged that appellee was injured while using a public street. The case was tried upon that theory and the jury instructed that he could not recover unless he was injured while traveling on a public street. This brings us to a consideration of instructions No. 4 and 5 given at the request of appellee.

The court, in instruction No. 4, quoted §5244 Burns 1914, Acts 1899 p. 477, which provides: "That the use by the public [of the] right of way or depot grounds of any railroad in this state by riding, driving or walking thereon, shall not ripen into a right to continue to do so even though it has been so used for a period of twenty years or more; nor shall such use be evidence of a grant to do so except where such use is made across such ground to connect a street or highway on each side thereof, and except where a court of competent jurisdiction has adjudged the existence of a street or highway," and then instructed the jury that, under this statute, if it found the strip designated in the complaint as Railroad Street was, at the time of the accident, a part of appellant's right of way, the mere fact that the public had continuously used it as a public road for more than twenty years, would not constitute such strip a public street, unless it should be found that such strip was so used by the public generally for twenty years to connect a street or highway on either side thereof as in such statute provided.

Instruction No. 5 was to the effect that if the jury found the strip so designated as Railroad Street was a part of the right of way of appellant and that it had been generally used by the public as a public highway to connect a street on either side thereof, and had been so used by the public under a claim of right for twenty years or more, it would be authorized in finding that such strip was a public highway.

Appellee concedes that §5244 Burns 1914, *supra,* is not applicable to the strip of land lying north of the team track extending from Depot Street to Lincoln Street, and that the statute is only applicable where the strip of ground was a part of the right of way of the railroad, and had been used to connect a street extending *across* the right of way. Appellee, however, in-

sists that the instruction is applicable to that part of · Lincoln Street which crosses the right of way and connects that part of Lincoln Street north of the railroad with that part south of the railroad. This contention cannot prevail. There was no claim made by anyone at the trial that Lincoln Street was not a public street at the point where it crossed the right of way.

The court in each of these instructions specifically referred to the strip designated in appellee's complaint as Railroad Street, and undertook to apply the

3. statute to that particular strip lying between Depot and Lincoln Streets and not to the part of the right of way connecting Lincoln Street north of the railroad with that part of the street south of the railroad. Section 5244 Burns 1914, *supra*, was not applicable to the evidence. The giving of instructions Nos. 4 and 5 was reversible error.

Appellee calls attention to instructions Nos. 17, 18 and 39 given at the request of appellant and insists that the giving of these rendered the giving of Nos. 4

4. and 5 harmless. No. 17 is in conflict with 4 and 5 and its effect would be to confuse the jury and leave them in doubt as to which instructions should be followed. We are not advised as to the order in which the instructions were given and even if No. 17 was given after Nos. 4 and 5, it would not have the effect of rendering the last two harmless. Nor does the giving of Nos. 19 and 39 cure the error.

Instruction No. 7 related also to the use of a highway under a claim of right and could only have been intended to refer to the use of the strip north of the team track. The giving of this instruction was also erroneous. There was no error in giving instruction No. 10 tendered by appellee.

In instruction No. 21, given by the court on its own motion, the court again quotes §5244 Burns 1914, *supra*,

and gave the jury to understand that it applied to highways by prescription but not to the acquisition of highways by dedication. As before stated, the statute referred to was not applicable to the evidence and this instruction should not have been given. Whether it would have been proper under the evidence to have given an instruction on the subject of dedication is very doubtful, to say the least, but we need not pass upon this question at this time. The strip designated in the complaint as Railroad Street was, under the evidence, without doubt a part of appellant's right of way.

This is not a case like *Pittsburgh, etc., R. Co.* v. *Town of Crown Point* (1898), 150 Ind. 536, 50 N. E. 741, where the public officials had taken possession of the way, graded and improved it each year for more than thirty years and where buildings had been erected upon the assumption and belief that it was a street. There the town had paved the strip of land in controversy upon the theory that it was a public street. In the instant case, the city had paved and improved streets crossing the railroad and had assessed the strip in question for such improvement, upon the theory that it was a part of appellant's right of way and not a street.

Instruction No. 24, given by the court on its own motion, applies the rule *res ipsa loquitur* to the proximate cause of the injury. The expression where "the casualty is of such a nature as in the ordinary course of things does not happen, if those who have the management thereof use due care, it affords *prima facie* evidence, in the absence of any explanation and rebuttal by the defendant, that the *injury* (Our italics) resulted from the want of proper care on the part of the defendant," renders the instruction erroneous for the same reason as the court held a similar instruction reversible error in *Pittsburgh, etc., R. Co.* v. *Arnott, Admr.* (1920), 189 Ind. 350, 126 N. E. 13. For

the reasons indicated the court erred in overruling the motion for a new trial.

Judgment reversed, with directions to sustain appellant's motion for a new trial and for further proceedings consistent with this opinion.