WASS, ADMX. *v.* SUTER, ET AL.

[No. 17,740. Filed March 25, 1949. Rehearing denied May 5, 1949. Transfer denied January 9, 1950.]

*Hoffman & Hoffman,* of Fort Wayne, for appellant.

*Barrett, Barrett & McNagny,* of Fort Wayne, for appellees.

ROYSE, P. J.—At all of the times referred to herein, appellees were the owners of a four and one-half story building in the City of Fort Wayne, Indiana.

The major portion of this building was leased to the Sears Company. The portion not occupied by that Company was used for Lodge purposes by the appellees. On March 27, 1944, the roof structure and interior of this building above the fourth floor was burned out and gutted by fire. On April 11, 1944, the west top wall of this building fell outward and onto the rear of the two-story annex of the Fort Wayne National Bank Building. It crashed through said annex, crushed and killed Samuel L. Wass, appellant's decedent.

Appellant brought this action for damages against appellees. Her complaint, after averring appellees were the owners of said property and in possession and control of the exterior walls and structural parts of said building and charged with the repair, maintenance and condition thereof, alleged, in part, as follows:

"3. That on March 27, 1944, a fire of unknown origin gutted the inner portion of said Harmony Hall and Sears-Roebuck Building, leaving the west top wall of said building standing without cover and without lateral support in a dangerous, unsafe, insecure and tottering condition and liable to fall over at any time.

"4. That the defendant, Harmony Lodge No. 19, and the said defendant Trustees of said Lodge negligently permitted the west top wall of said building to remain standing in said dangerous, unsafe, insecure and tottering condition for an unreasonable period of time of 15 days after the fire aforesaid, knowing or charged with the knowledge of the fact that said walls were unsafe.

"5. That on April 11, 1944, part of the west top wall left standing after the fire aforesaid fell outward across the alley adjacent thereto and upon the Old-First Bank Building located on the property to the west of said building and adjoining the alley adjacent thereto, then and thereby killing the decedent, Samuel L. Wass."

It further averred decedent was an employee of the Receiver of said bank and left surviving him his widow who had been damaged by his death in the sum of $10,000. Appellees answered in two paragraphs, the first admission and denial under the rules; the second raised the question of election of remedies, which latter paragraph was denied by appellant's reply.

Trial to a jury resulted in verdict in favor of appellees. Judgment accordingly. From that judgment appellant prosecutes this appeal. The error assigned here is the overruling of the motion for a new trial. The specifications of that motion assert the trial court erred in excluding certain evidence offered by appellant, and in the refusal to give and the giving of certain instructions.

The crux of the principal questions presented by this appeal is whether the doctrine of *res ipsa loquitur* is applicable in this case.

This doctrine has been generally defined to mean that when the thing which caused the injury to the plaintiff was under the control and management of the defendant or his servants, and the occurrence was such that in the ordinary course of things would not happen if those who had its control and management use proper care, that this affords reasonable evidence, in the absence of explanation by the defendant, that the injury arose from or was caused by the defendant's want of care; that under such circumstances there is a prima facie case of negligence. 45 C. J. 1193, § 768; 38 Am. Jur. 989, § 295; *Union Trac. Co. of Indiana* v. *Berry, Admr.* (1919), 188 Ind. 514, 530, 121 N. E. 655, 124 N. E. 737, 32 A.L.R. 1171; *City of Decatur* v. *Eady, Execrx.* (1917), 186 Ind. 205, 218, 115 N. E. 577. It is a rule

of evidence. 45 C. J. 1196, § 709; 38 Am. Jur. 994, § 298.

Where, after a fire, a wall left standing for an unreasonable time, falls without apparent cause, in the absence of explanatory circumstances, the doctrine is applicable because it leads to an inference of an omission of duty in maintaining it. Such inference is sufficient to establish a prima facie case of negligence. 45 C. J. 1201, n21; 9 Am. Jur. 225, § 30, n4; *Barrett* v. *Stoneberg et al.* (1947), 238 Iowa 1068, 29 N. W. 2d 420, 422; *Teter* v. *Olympia Lodge No. 1, I.O.O.F.* (1938), 195 Wash. 185, 80 P. 2d 547, 549; *Sessengut, Admx.* v. *Posey* (1879), 67 Ind. 408; *City of Anderson et al.* v. *East* (1888), 117 Ind. 126, 130, 19 N. E. 726.

In the case of *Teter* v. *Olympia Lodge, etc., supra,* where the facts were strikingly analogous to those in this case, the Supreme Court of Washington said:

" 'The question of the liability of a landowner for damage to adjoining premises has frequently arisen in connection with the fall of walls which had been weakened and made dangerous by fire. The general rule is, that where a fire has occurred in a building, destroying the inner portion of the building, and leaving the walls, if the owner permits the walls to remain standing, and they thereafter fall, he is liable to the adjoining owner for the resulting damage; for to maintain such a wall after the expiration of a reasonable time for investigation and for its removal, would not be a reasonable and proper use of one's property, as it is the duty of a landowner not to suffer such a wall to remain on his land where its fall would injure his neighbor, without using such care in the maintenance of it as would absolutely prevent injuries, except from causes over which he would have no control, but he cannot be held liable for the injury, or bound to make the structure safe, until he has had a reasonable time, after it

has so become dangerous, to take the necessary precaution.' "

The owner is not relieved from liability by reason of the fact he employed a competent contractor to make the building safe, (although that was not done in this case). *Sessengut, Admx.* v. *Posey, supra; Independent Five and Ten Cent Stores of New York* v. *Heller* (1920), 189 Ind. 554, 558, 127 N. E. 439.

The application of the doctrine is based on the theory that under the special circumstances which invoke its operation, the plaintiff is unable to show the particular act of negligence which caused the injury or that the defendant is in a better position to do so. There is some conflict among the authorities as to whether pleading a specific act of negligence waives the pleader's right to rely upon this doctrine. Many jurisdictions hold that if a case is a proper one for the application of the doctrine, the plaintiff, by pleading specific acts of negligence, does not lose his right to rely on this doctrine provided a general allegation of negligence is made. 38 Am. Jur. 1001, § 305, n.12; 45 C. J. 1226-27, § 786, n.88. Indiana has adopted this view. *Terre Haute and Indianapolis R. Co.* v. *Sheeks* (1900), 155 Ind. 74, 91, 56 N. E. 434; *Southern R. Co. et al.* v. *Adams* (1913), 52 Ind. App. 322, 100 N. E. 773; *Louisville and Southern Indiana Trac. Co.* v. *Worrell* (1909), 44 Ind. App. 480, 86 N. E. 78 (Transfer denied); *Pittsburgh, Cincinnati, Chicago & St. Louis R. Co.* v. *Boughton* (1924), 81 Ind. App. 129, 134, 142 N. E. 869; *Baltimore and Ohio Southwestern R. Co.* v. *Hill, Admr.* (1926), 84 Ind. App. 354, 359, 148 N. E. 489 (Transfer denied); *Bence* v. *Denbo* (1934), 98 Ind. App. 52, 183 N. E. 326 (Transfer denied).

In the case of *Terre Haute & Indianapolis R. Co.* v. *Sheeks, supra,* the fourth paragraph of complaint alleged in specific details how a railway switch, in the exercise of ordinary care, should be constructed. It then averred the defendant knew how said switch should be constructed but negligently and carelessly constructed the switch in a different manner which it described in minute detail. In that case the appellant contended this paragraph of complaint did not bring the appellee within the doctrine of *res ipsa loquitur.* In overruling this contention the Supreme Court, at page 91, said:

"It can not be successfully asserted that because she by her complaint has been more particular and specific in describing the deficiencies of the switch in controversy than was necessarily required, therefore she can not recover unless she proves all the particular defects as charged in the complaint. Reduced to a simple proposition, the gravamen of the fourth paragraph of the complaint may be said to be that, while the relation of passenger and carrier existed between appellee and appellant, she was injured by the derailment of the train upon which she had taken passage; that the derailment was due to a broken rail in a certain switch located on appellant's road near the town of Coatesville, in the construction and maintenance of which switch appellant was guilty of negligence. It can not be said that the complaint charges only specific acts of negligence, and none in general."

We are of the opinion the appellant's complaint was sufficient to permit her to invoke the doctrine of *res ipsa loquitur.*

In her case in chief the appellant introduced evidence which tended to prove appellees owned, controlled and were in possession of the building; that the fire of March 27th gutted the building. It was burned down

to the fourth floor and the west wall stood about thirty feet above the fourth floor level. On the morning this wall collapsed a witness observed the only lateral supports for this wall were two beams about twenty feet apart. There was no evidence as to whether or not these were adequate and proper supports. A few minutes prior to the collapse a witness observed the wall swaying with the wind and the guy wire supports were moving. Appellees employed a contractor to clear away the debris the day after the fire. The wall crashed through the roof of the bank building. Decedent was crushed and died of his injuries. He left surviving him his widow, who, as administratrix of his estate, is the appellant herein. At the conclusion of this evidence appellees' motion for a directed verdict in their favor was overruled.

It is to be noted there was no evidence that appellees were guilty of any specific acts of negligence which were proved to be the precise cause of the injury to appellant's decedent. We are of the opinion the evidence was sufficient to make a prima facie case of negligence entitling appellant to have her case submitted to the jury under the doctrine of *res ipsa loquitur. Indianapolis Street R. Co.* v. *Schmidt* (1904), 163 Ind. 360, 71 N. E. 201; *Cleveland, Cincinnati, Chicago & St. Louis R. Co.* v. *Hadley* (1908), 170 Ind. 204, 84 N. E. 13; *Bence* v. *Denbo, supra,* p. 57; *City of Decatur* v. *Eady, Execrx, supra,* p. 216; *Plumb* v. *Richmond Light and R. Co. et al.* (1922), 233 N. Y. 285, 135 N. E. 504, 25 A.L.R. 685; 38 Am. Jur. 995, 996, § 299; 45 C. J. 1206, 1207, § 774.

The cases of *Prest-O-Lite Company* v. *Skeel* (1941), 182 Ind. 593, 599, 600, 106 N. E. 365; *Indiana Harbor Belt R. Co.* v. *Jones* (1942), 220 Ind. 139, 148, 149, 41 N. E. 2d 361; *Union Trac. Co. of Indiana* v. *Berry,*

*Admr., supra,* cited by appellees in support of their contention that the doctrine of *res ipsa loquitur* is not applicable to this case, are clearly distinguishable from the facts in this case. In those cases, as stated in the Prest-O-Lite case, *supra,* the primary requisite for the application of the doctrine was absent, viz. the evidence did not tend to prove that the management and control of the instrumentality which caused the injury was in the control of the defendant, at least, as between it and the plaintiff.

To overcome the appellant's prima facie case appellees introduced evidence which tended to prove the collapse of the building was caused by hidden defects contained in its design and construction; that these defects were unknown to appellees and could only have been discovered by cutting into the walls at various points to check its construction. The contractor who cleared the debris was not employed to make any inspection of the walls before they collapsed. They did not order him to put any bracing on the wall. He did put some on as a protection to his workmen. He did not examine the construction of the top walls after the fire.

Thereupon, appellant offered in rebuttal the testimony of two witnesses, a Mr. Walter Henk and A. K. Hofer. Mr. Henk testified he had an office in the bank building. From the window of his office he could see the north half of the west wall of appellees' building. On April 10th, the morning before the accident, he was looking out the window toward this wall. At this point the following question, objection, offer to prove and ruling was made:

"Q. As you looked out and saw that building, did you see anything with regard to that wall?

"MR. HUNT:

To which question the defendants separately and severally object, as that is not rebuttal as it is a part of the plaintiff's case in chief, all of which was gone into by the plaintiff before the defendants started their case, and it is wholly cumulative and it is not proper rebuttal.

"MR. HOFFMAN:

The plaintiff offers to prove that if the witness is permitted to answer the question, he will testify that he saw the top of the west wall of that building moving back and forth and that he did not observe any bracing on the outside of that wall and further that the testimony, which the plaintiff is about to give, was not known to the plaintiff or her attorneys prior to the time she rested her case in chief.

"Offer is over-ruled by the Court and the objection is sustained by the Court; to which rulings of the Court the plaintiff excepts.

"I could see the West wall of the Sears Building from our office on the East side of the Fort Wayne Bank Building. I observed it numerous times between March 27th and April 11th. At this point the following questions, and offers to prove were made to each of which the defendant interposed the same objection as set forth in the preceding question, which objection was sustained and the offer of the plaintiff was overruled.

"Q. Did you, Mr. Witness, at any time see any outside bracing of the West wall of said building?

"MR. HOFFMAN:

The plaintiff offers to prove that if the witness is permitted to answer the question, he will testify that he did not see any outside bracing of the West wall of this building.

"Q. Did you, Mr. Witness, ·on the 10th day of April 1944, observe any movement in the top West wall of that building, before the time that the wall fell?

"MR. HOFFMAN:

The plaintiff offers to prove that if the witness is permitted to answer the question, that he will answer the question yes. (Ex. 434.)"

Mr. A. K. Hofer, a civil engineer engaged in that occupation since 1915, has been engaged in the supervision and construction of large buildings; was familiar with appellees' building and saw it almost every day including the day it fell. After the wall fell he made an examination of the building. At this point the following question, objection, offer to prove and ruling was made:

"Q. And what was the occasion for that examination?

"MR. HUNT:

To which question the defendants separately and severally object, as that is not rebuttal as it is a part of the plaintiff's case in chief, all of which was gone into by the plaintiff before the defendant started its case, and it is wholly cumulative and it is not proper rebuttal.

"MR. HOFFMAN:

The plaintiff offers to prove that if the witness is permitted to answer the question, he will testify that he was employed to make an inspection of that building and determine the cause of the fall of that West wall. Offer is over-ruled by the Court and objection is sustained by the Court; to which rulings of the Court the plaintiff excepts. (Ex. 437.)

"At this point the following questions and offers to prove were made, to each of which the defendant interposed the same objection as set forth in the preceding question, which objection was sustained and the offer of the plaintiff was overruled.

"Q. Mr. Hofer, did you make an inspection of the Harmony Lodge 19 Building after the West part of the wall fell on April 11, 1944?

"MR. HOFFMAN:

The plaintiff offers to prove that if the witness is permitted to answer the question, that the answer will be yes.

"Q. As a result of that inspection, did you form an opinion as to the cause of the fall of the West wall of that building?

"MR. HOFFMAN:

The plaintiff offers to prove that if the witness is permitted to answer the question, that the answer will be yes.

"Q. What is that opinion?

"MR. HOFFMAN:

The plaintiff offers to prove that if the witness ness is permitted to answer the question, he will testify that the wall was left standing in a dangerous, unsafe and tottering condition, without adequate lateral supports and that the wall fell outward because it was improperly braced and supported.

"Q. And at the time you made your inspection, Mr. Witness, did you also inspect the bracing that was erected to support the West wall of that building?

"MR. HOFFMAN:

The plaintiff offers to prove that if the witness is permitted to answer the question, that the answer will be yes.

"Q. Did you form an opinion at that time as to whether or not that bracing served as a sufficient precaution to protect that wall from falling, due to the pressures of winds to be expected at that time of the year?

"MR. HOFFMAN:

The plaintiff offers to prove that if the witness is permitted to answer the question, that the answer would be yes.

"Q. What was that opinion?

"MR. HOFFMAN:

The plaintiff offers to prove that if the witness is permitted to answer the question he will testify

that my opinion is that the bracing that was erected was inadequate both in design and execution and that the bracing did not provide adequate lateral support to prevent that wall from falling outward from the pressure from winds to be expected at that time of the year.

"Q. Mr. Witness, did you inspect that part of the West wall that had fallen?

"MR. HOFFMAN:

The plaintiff offers to prove that if the witness is permitted to answer the question, that the answer will be yes.

"Q. Did you inspect the bracing that supported that part of the wall that had fallen?

"MR. HOFFMAN:

The plaintiff offers to prove that if the witness is permitted to answer the question, that the answer will be yes.

"Q. What was the height of the West wall of that building above the fourth floor?

"MR. HOFFMAN:

The plaintiff offers to prove that if the witness is permitted to answer the question, he will testify about thirty-five feet.

"Q. Did you find any evidence of bracing, covering that part of the West wall that fell outward?

"MR. HOFFMAN:

The plaintiff offers to prove that if the witness is permitted to answer the question, he will testify that there was only bracing at one edge of that part of the wall that fell over.

"Q. What was the unbraced width of the wall that fell?

"MR. HOFFMAN:

The plaintiff offers to prove that if the witness is permitted to answer the question, he will testify that the unbraced width of the wall that fell was forty feet at the bottom and about seventy feet at the top.

"Q. Mr. Hofer, did you compute the moment of resistance of that part of that wall?

"MR. HOFFMAN:

The plaintiff offers to prove that if the witness is permitted to answer the question, that he will answer yes.

"Q. Did you compute the overturning moment of that wall?

"MR. HOFFMAN:

The plaintiff offers to prove that if the witness is permitted to answer the question, that he will answer yes.

"Q. What relation did that over-turning moment bear to the moment of resistance?

"MR. HOFFMAN:

The plaintiff offers to prove that if the witness is permitted to answer the question, that he will answer that it would be greater.

"Q. At what wind pressure did you compute the overturning moment of the wall and estimate the moment of resistance of that wall as it stood before it fell?

"MR. HOFFMAN:

The plaintiff offers to prove that if the witness is permitted to answer the question, that he will answer that it would be about twenty miles an hour.

"Q. Then if I understand your answer correctly, Mr. Hofer, a twenty mile wind would have overturned this wall as it then stood?

"MR. HOFFMAN:

The plaintiff offers to prove that if the witness is permitted to answer the question, he will answer yes."

When the appellant established her prima facie case the appellees had the duty of going forward with the evidence or of taking the chance the jury would accept the prima facie case and return a verdict against them. They undertook to do this by evidence from which the jury might have found they had overcome the prima facie case made by appellant in her case in chief.

When appellees had produced this evidence it then became the privilege of appellant to answer by countervailing evidence. *Baltimore & Ohio Railroad Co. v. Hill, Admr., supra,* pp. 367, 368. When defendant has offered evidence in explanation, the "plaintiff is not precluded from offering evidence in rebuttal of defendant's evidence, but, on the contrary, if a satisfactory explanation is offered plaintiff must show its insufficiency or other non-applicable features or introduce other evidence to sustain the charge if he would prevent the court from granting a nonsuit or directing a verdict against him." 45 C. J. 1224, 1225, § 784. And, in a *res ipsa loquitur* case, if a satisfactory explanation is offered by the defendant, the plaintiff can rebut it by specific evidence of negligence. *Plumb* v. *Richmond Light & R. Co. et al., supra; Fink* v. *New York Central Railway Co.* (Ohio App., 1943), 56 N. E. 2d 931; 38 Am. Jur. 1009, § 311.

We are of the opinion this rejected evidence tended to directly contradict the appellees' explanation of the cause of the collapse of the wall. Certainly the appellant had the right to do this. From this evidence the jury might reasonably have found the collapse was caused by inadequate bracing and support of the wall and not from hidden or latent defects. It would also tend to show appellees had, or in the exercise of reasonable care should have known of the dangerous condition of the wall. We hold the trial court erred in excluding this evidence.

Appellant next questions the refusal of the trial court to give her tendered instructions Nos. 5 to 10 inclusive. These instructions related to the doctrine of *res ipsa loquitur*. We are of the opinion appellant was entitled to proper instructions on this sub-

ject. In view of the conclusion we have reached, it is not necessary to determine the particular points made by appellant on this matter. Nor do we deem it necessary to pass upon appellant's objections to certain instructions tendered by appellees and given by the trial court. However, it might be well to point out the Supreme Court has stated "when courts have undertaken to instruct juries that this or that may be presumed, without evidence of the fact, they have invariably committed error." *Baltimore & Ohio R. Co.* v. *Rayher, Admrx., et al.* (1940), 216 Ind. 545, 550, 24 N. E. 2d 284; *Kelley* v. *Dickerson* (1938), 213 Ind. 624, 634, 13 N. E. 2d 535; *Evansville and Terre Haute R. Company* v. *Berndt, Admrx.* (1909), 172 Ind. 697, 707, 88 N. E. 612. Likewise, the burden of proof never shifts, but there are occasions when the duty to go forward with the evidence shifts. *Meyers* v. *Emerson et al.* (1948), 118 Ind. App. 463, 77 N. E. 2d 902 (transfer denied); *Daugherty* v. *Daugherty* (1947), 118 Ind. App. 141, 75 N. E. 2d 427 (transfer denied).

For the errors hereinbefore set out, the judgment is reversed.

Crumpacker, C. J.—Not participating.

NOTE.—Reported in 84 N. E. 2d 734.