Betty PARDUE and Stanley Joe Pardue, Plaintiffs-Appellants,

v.

SEVEN–UP BOTTLING CO. OF INDIANA, Defendant-Appellee.

No. 1–280A37.

Court of Appeals of Indiana, First District.

July 22, 1980.

Rehearing Denied Sept. 2, 1980.

David S. McCrea, McCrea & McCrea, Bloomington, for plaintiffs-appellants.

William H. Kelley, William K. Steger, Bunger, Harrell & Robertson, Bloomington, for defendant-appellee.

NEAL, Judge.

## STATEMENT OF THE CASE

Plaintiffs-appellants Betty Pardue and Stanley Joe Pardue appeal a judgment of the Monroe Superior Court entered on a jury finding adverse to the Pardues in their actions for damages for personal injuries against defendant-appellee Seven-Up Bottling Company of Indiana, Inc. The Pardues sought recovery under two theories, strict products liability and negligence.

## ISSUE

The Pardues raise one issue for review: whether the trial court erred in instructing the jury on the issue of contributory negligence. They contend there was "not a scintilla of evidence or any inference from the evidence which would suggest an instruction on contributory negligence." We agree but we affirm.

## STATEMENT OF THE FACTS

While shopping at a Bloomington supermarket, Betty Pardue lifted a carton of Seven-Up bottles by the carton's handle from her grocery cart to place the carton on the checkout counter. One bottle fell through the carton, bounced off the counter, hit the floor, and exploded. A piece of the bottle almost completely severed the Achilles tendon of Betty's right ankle necessitating surgery and a lengthy period of recuperation and curtailment of normal activities.

## DISCUSSION AND DECISION

Although the Pardues argue to us their objection to three instructions, the record shows only two of the three were actually given, both defining the concept of contributory negligence and assigning the burden of proof on that issue. The record shows the Pardues made at trial the same objection they argue to us and that the trial court noted their continuing objection to all references to contributory negligence in the final instructions.

Although the Pardues failed to set out their verbatim trial objection to the instructions in the argument section of their appellant's brief as required by Ind. Rules of Procedure, Appellate Rule 8.3(A)(7), we address the merits under the authority of *Dahlberg v. Ogle*, (1977) 266 Ind. 524, 364 N.E.2d 1174. The challenged instructions are set out verbatim, accompanied by record page number citations, in the "Statement of Facts Relevant to Review" and again in the "Argument", and the argument section commences with a statement of the issue, such statement being in fact a paraphrase of the error as assigned in the motion to correct errors. As the Supreme Court said, in 364 N.E.2d at 1175:

"This brief substantially complies with our rules and is of sufficient cogency that it can be responded to by appellees with-

out undue hardship or extraordinary expense . . . ."

The Pardues contend that the evidence is uncontradicted as to Betty's care in the handling of the soft drink carton; therefore, the giving of contributory negligence instructions was reversible error. Seven-Up counters with what it characterizes as "sufficient facts and inferences to support that the trial court properly discharged its duty in giving the contributory negligence instructions." *In toto*, this appears to be the testimony of Betty that she was aware of the composition, makeup, and configuration of paperboard cartons and was aware that such materials could tear. She testified:

"Q. And this would be the same type of carton that you would have been using for several years prior to the accident, isn't that right?

A. Yes.

Q. Now you're of course aware that it's made of what I call cardboard, but what's been referred to as paperboard, are you not?

A. Yes.

Q. And you're aware and were aware in July of 1977 that cardboard and paperboard will tear, weren't you?

A. Yes.

\* \* \* \* \* \*

Q. You, of course, were also aware and are aware today that eight 16-ounce bottles are quite heavy when you have them in any kind of container, aren't you?

A. Yes."

■ As defined to the jury, contributory negligence is the failure of a plaintiff to use reasonable care to avoid injury to herself, which failure is a proximate cause of the injuries for which she seeks to recover. We cannot see how the act of Betty in picking up the carton by its handle and moving it upward and toward the counter can be construed to involve a failure on her part to use reasonable care to avoid personal injury, nor can we see how an awareness that filled soft drink bottles are heavy and that paperboard cartons are capable of tearing can transform her action into such a failure. Seven-Up had a duty to package its product in a container which would measure up to the task assigned it by Seven-Up, and Betty had every right to rely on the fulfillment of that duty when she picked up the carton by the handle designed for that very purpose.

"In *Pennsylvania Ice & Coal Co. v. Elischer*, (1939) 106 Ind.App. 613, 21 N.E.2d 436, the Appellate Court defined the standard of review when an instruction is attacked on appeal as being outside of the issues and evidence:

'[I]nstructions should be relevant to the issues in each particular case and applicable to the facts and circumstances therein. If there were any facts or circumstances in the case, although quite meager, to which the instructions might, upon any view, be pertinent, provided they were correct in the statement of the law, it would not be error for the court to give them, although they were so given to the jury over the objection of the complaining party. Furthermore, it is not every instance where the trial court has given an instruction not applicable to the evidence which will constitute reversible error, but it must be made further to appear that the giving of such instruction tended to injure or harm the complaining party in his substantial rights. . . . In determining whether or not an instruction is applicable to the evidence, it is necessary to consider the evidence in its entirety, together with all reasonable inferences which might be drawn therefrom . . . .' 106 Ind.App. at 621, 21 N.E.2d at 439.

*See also Schlarb v. Henderson*, (1936) 211 Ind. 1, 4 N.E.2d 205.

It is error for a trial court to give an instruction which is not pertinent to the issues and applicable to the evidence. *Baker v. Mason* (1968), 253 Ind. 348, 242 N.E.2d 513. And, where it is claimed that an instruction was given upon which there is no evidence, the point of inquiry in determining whether the erroneous in-

struction was prejudicial is whether the jury was misled. *Rondinelli v. Bowden*, (1973) 155 Ind.App. 582, 293 N.E.2d 812." *Hartman v. Memorial Hospital of South Bend*, (1978) Ind.App., 380 N.E.2d 583, 585.

■ Seven-Up has demonstrated no facts or circumstances in this case to which contributory negligence instructions would be pertinent; thus, their giving was error. We must assume that the erroneous giving of an instruction on contributory negligence unsupported by any evidence is prejudicial and cause for reversal unless it appears from the record that the error was harmless, *Gergely v. Moore*, (1954) 125 Ind.App. 263, 120 N.E.2d 637 and 122 N.E.2d 142, in that the jury was not misled. *Hartman, supra.*

In ruling on this allegation of error in the Pardues' motion to correct errors, the trial court said, in part:

"Assuming arguendo . . ., that there was not a scintilla of evidence of Betty Pardue's contributory negligence, then the instructions given by the Court concerning contributory negligence were harmless error since there was no evidence from which the jury could infer contributory negligence."

This erroneous reasoning would lead to the conclusion that any number of unrelated, irrelevant instructions could be given to the jury without causing harm because the jury would recognize their irrelevance and ignore them. This overlooks the fact that the jury was told that, by the final instructions, the trial court was advising the jury:

"on all matters of law which are appropriate for the Jury to consider in arriving at their verdict. These instructions are given pursuant to that law.

In deciding this case you must determine the facts from a consideration of all the evidence in light of the law as contained in these instructions. All the law in the case is not embodied in any single instruction. Therefore, you must consider these instructions as a whole and construe them in harmony with each other."

The jury was told that all the instructions it received were appropriate to the case and that all the instructions were to be considered. It is our task to decide whether, after considering all the instructions, the jury was misled by the erroneous instructions on contributory negligence.

■ In order to determine whether the jury was misled, we must decide from an examination of the evidence and the record whether the verdict under proper instructions could have been different. *Neese v. Boatright*, (1954) 124 Ind.App. 680, 118 N.E.2d 510; *Clark v. Rohr, Administratrix*, (1953) 123 Ind.App. 209, 109 N.E.2d 727; *Public Service Company of Indiana, Inc. v. DeArk, Administratrix*, (1950) 120 Ind.App. 353, 92 N.E.2d 723. If the verdict could not have been different, the Pardues were not prejudiced and we must affirm.

*Gergely, supra*, stands for the proposition that if there is any evidence in the record of negligence on the part of the defendant, an instruction on contributory negligence which is not supported by the evidence is reversible error. Under the authority of *Gergely, supra*, we have searched the record and now find that the error in the giving of the contributory negligence instructions was harmless because, regardless of those instructions, no judgment for the Pardues on their negligence theory could stand because of a total absence of any showing of negligence on the part of Seven-Up.

In their complaint, the Pardues alleged that Seven-Up was negligent in designing, packaging, merchandising, and purveying its products; in their appellate brief, they specifically allege failure "to use the proper degree of care in stocking the shelves" at the supermarket and negligence "in inspecting the cartons it placed on those shelves for tears."

In an effort to prove their allegations, the Pardues introduced the following uncontroverted evidence: The manager of the new product development group of 15 engineer designers for a company which designs, manufactures, and markets soft drink cartons testified that his company conducts stress tests of its cartons, designs cartons to

support four times the weight they will actually have to carry, and inspects the cartons before they leave the factory. His company manufactures two types of cartons for returnable bottles, full protection and non-full protection. It is Seven-Up's policy to purchase from his company only full protection cartons although the soft drink industry purchases full protection cartons to meet only 60 percent of its needs. Seven-Up purchased 1,300,000 cartons from his company in 1977. Seven-Up purchased only full protection cartons from his company during 1977 up to the date of Betty's injury on July 22, 1977. The soft drink industry uses each carton on the average of two and one-half to three times before discarding it. There is no satisfactory scientific way to establish how many times each carton can be reused because that varies with the treatment it receives each time it is used. Therefore, visual human inspection is a good method to rely upon in determining reusability each time a carton is returned to the bottling plant.

The vice president of operations for Seven-Up at its Indianapolis plant, which plant supplies the distributor who supplies the supermarket here involved, testified that five persons are employed to visually inspect used cartons returned to the bottling plant. These inspectors have been instructed to discard every torn, damaged, deteriorated, dirty, or scuffed carton without exercising any discretion as to the seriousness of the problem or the carton's reusability. The head supervisor of the inspection team was personally trained in such inspection by the vice president during a week he spent working as a part of the inspection team when he first took over the plant. Each carton is used an average of three times.

The Seven-Up route salesman who supplied the supermarket on the morning of July 22, 1977, testified that he filled the shelves that morning according to his usual practice of lifting each carton of soft drink bottles about three to six inches above the wooden carrying case, shaking the carton to check if the bottom was giving way, and visually checking for defects in the carton as he placed it on the shelf, all pursuant to

instructions by his supervisor. From the time the cartons were placed in wooden cases in Indianapolis until the salesman placed them on the store's shelves, the cases were transported in covered vehicles and all handling of the cases was done mechanically by forklift; no one or nothing touched the cartons.

The manager of the supermarket on July 22, 1977, testified that he observed the Seven-Up salesman stocking the shelves that morning and that the salesman was shaking each carton in the process "as all the pop men do."

The record discloses no evidence demonstrating a violation by Seven-Up of any regulation, statute, custom, usage, or industry standard. In fact, the record shows Seven-Up conformed to or surpassed at least some standards of the soft drink industry. There was no expert testimony in a case which would seem to come within the general rule requiring expert evidence in a case involving a question of negligence which an ordinary person is not equipped by common knowledge and skill to judge. 65A C.J.S. *Negligence* § 243(2) (1966). There was no testimonial assertion that Seven-Up's procedures and practices were unreasonable.

There was no proof of how or when the tear in the carton occurred. The evidence showed that the carton was in the possession of the supermarket for an undisclosed length of time during which it could have been handled by other customers and store employees.

We note that the Pardues did not attempt to rely on the doctrine of res ipsa loquitur which, upon a plaintiff's proof of certain circumstances, raises an inference of the defendant's omission of a duty sufficient to establish a prima facie case of negligence, placing on the defendant the burden of going forward with explanatory evidence to overcome the prima facie case. *Wass, Administratrix v. Suter*, (1949) 119 Ind.App. 655, 84 N.E.2d 734. Seven-Up had no such burden in this case.

There is simply no evidence or inference from which a jury could have inferred substandard conduct on the part of Seven-Up which proximately caused Betty's injury. Disbelief of a defendant's testimony as to precautions used and his exercise of care cannot take the place of evidence of negligence. 65A C.J.S. *Negligence* § 243(3). The inference of negligence may not be based on mere surmise, conjecture, guess, speculation, or probability. 65A C.J.S. *Negligence* § 243(5). When an event takes place, the real cause of which cannot be traced, or is at least not apparent, it ordinarily belongs to that class of occurrences designated as purely accidental, and, there being no presumption of negligence in such cases, the party who asserts negligence must show enough to exclude the case from the class mentioned; a jury cannot arbitrarily infer negligence, but the evidence must affirmatively establish circumstances from which the inference fairly arises that the accident resulted from the want of some precaution which the defendant ought to have taken. *Wabash, St. Louis and Pacific Railway Company v. Locke, Administrator*, (1887) 112 Ind. 404, 14 N.E. 391. A jury can infer negligence from the facts proved, but it cannot infer the existence of the facts which would constitute negligence. *Vandalia Railroad Company v. McMains*, (1908) 42 Ind.App. 532, 85 N.E. 1038.

In light of the evidence presented at trial, we find as a matter of law there was no evidence of negligence on the part of Seven-Up; therefore, the erroneous giving of contributory negligence instructions was harmless and not reversible error. We further note that Betty also proceeded on the theory of strict products liability to which contributory negligence is not a defense, *Gregory v. White Truck & Equipment Co., Inc.*, (1975) 163 Ind.App. 240, 323 N.E.2d 280, and she failed to secure a judgment from a jury properly instructed on that theory. In Stanley's cause of action alleging Seven-Up's negligence was the proximate cause of his loss of consortium, the jury was not instructed to impute any contributory negligence of Betty to Stanley and yet he also failed to secure a judgment from the jury.

The judgment of the trial court is affirmed.

Affirmed.

ROBERTSON, P. J., concurs.

RATLIFF, J., dissents with opinion.

RATLIFF, Judge, dissenting.

I agree with the majority that there was no evidence which would support finding Betty Pardue guilty of contributory negligence. Therefore, it was error to give instructions on contributory negligence. *Gergely v. Moore*, (1954) 125 Ind.App. 263, 120 N.E.2d 637 *reh. den.* 122 N.E.2d 142. Furthermore, such error is presumed prejudicial and therefore reversible unless it appears from the record that such error was harmless. *Id.* I also agree if there were no evidence which would support a finding of negligence on the part of Seven-Up that such error would not be reversible, because in such event, there would be no basis for any recovery, and Pardue could not have been prejudiced by the giving of the contributory negligence instructions. However, I cannot agree with the statement of the majority that "[t]here is simply no evidence or inference from which a jury could have inferred substandard conduct on the part of Seven-Up which proximately caused Betty's injury." Likewise, the majority's finding as a matter of law that there was no evidence of negligence on the part of Seven-Up is, in my opinion, incorrect.

While negligence of Seven-Up may not be inferred merely from the fact that a bottle fell through the carton, broke, and exploded, cutting Betty Pardue's Achilles tendon, the jury could infer the existence of a hole or tear in the bottom of the carton from such occurrence. This inference, coupled with the testimony of Crouch, Seven-Up's route man, that he only looked for tears on the sides of the cartons, and merely conducted a "shake" test for tears in the bottom of the cartons, and that he never lifted a carton to visually inspect the bottom for holes or tears because it took too much

**1160**

time, constitutes sufficient evidence for the consideration of the jury of whether or not Seven-Up exercised reasonable care in checking for defects in such cartons which could foreseeably result in injuries to purchasers. There being sufficient evidence to go to the jury on the question of negligence on the part of Seven-Up, it was clearly prejudicial error to instruct the jury on contributory negligence in the absence of any evidence supporting the invoking of that doctrine.

For the reasons heretofore stated, I would reverse the judgment as to the negligence count. Consequently, I dissent.