FRANCIS H. HUNT *vs.* THE CENTRAL VERMONT RAILWAY
COMPANY.

First Judicial District, Hartford, October Term, 1923.
WHEELER, C. J., BEACH, CURTIS, BURPEE and KEELER, JS.

Whether a railroad company exercised reasonable care to maintain an
    electric danger signal at a highway grade-crossing in such a con-
    dition that it would operate normally and give timely notice of
    an approaching train to travelers on the highway, presents an issue
    of fact for the determination of the jury, whose verdict, rendered
    upon conflicting evidence, is final and conclusive.
The credibility of witnesses is a matter for the jury to pass upon, al-
    though their testimony may not be directly contradicted.
An inference of negligence upon the part of a railroad company in the
    inspection and maintenance of a danger signal at a highway cross-
    ing, may arise from the failure of the apparatus to work in a given
    instance, provided it appear that the signal is under the exclusive
    control and management of the railroad company, and that, if
    properly inspected and kept in repair it could hardly fail to give
    the timely warning which it was designed to give. Under these
    conditions the rule of *res ipsa loquitur* applies.
This inference of negligence is rebuttable, but whether it has been
    successfully rebutted or not is a question for the jury.
It is peculiarly within the province of a jury to determine, within the
    statutory limit, § 6137, the amount of damages recoverable in
    actions for death caused by negligence.
In the present case this court refused to set aside, as excessive, a ver-
    dict of $6,179 for the plaintiff.

Argued October 3d—decided November 7th, 1923.

ACTION to recover damages for personal injuries
alleged to have been caused by the defendant's negli-
gence, brought to the Superior Court in Tolland
County and tried to the jury before *Haines, J.;* verdict
and judgment for the plaintiff for $300, and appeal by
the defendant. *No error.*

A companion case, Hunt, Admr. v. The Central
Vermont Railway Company, arising out of the same
accident and resulting in the death of the plaintiff's

intestate, was tried with this case and resulted in a verdict and judgment for the plaintiff for $6,179, from which the defendant appealed. *No error.*

*Charles B. Whittlesey,* for the appellant (defendant).

*William A. King,* for the appellees (plaintiffs).

BEACH, J.   The collision occurred on May 25th, 1922, at a grade-crossing in the town of Franklin, known as Williams crossing, at which the view of the track southerly of the crossing is obstructed.   The decedent and her son, the injured minor, were riding as invited guests in an automobile owned and driven by T. Newton Owen.   It was not disputed that the crossing was protected by a signal known as the Hall visible and audible signal, of a type approved by the Public Utilities Commission, connected with track circuits extending about one thousand feet in either direction from the crossing, and that it was designed to drop a red disc over an opening in the face of the signal and to place a red glass in front of a light at the top of the signal whenever a train approaching the crossing entered upon either of the track circuits, and also to cause both opening and light continuously to show red, and an electric bell continuously to ring, until after the train passed over the crossing.   The signal bore in large letters the legend "Danger.   Do not cross when red." No negligence is charged in the selection of this type of signal.

The negligence alleged is that the defendant on or before the date of the accident negligently operated the signal so that it did not work, and showed no red disc when a train was approaching, and gave no timely warning to travelers on the highway that a train was approaching and about to reach the crossing.

As to the legal duty of the defendant it is not claimed that the defendant was an insurer, but that it was bound to use reasonable care, in maintaining the signal so that it would operate normally and give timely notice of an approaching train; having in mind the fact that when not red it operated as an invitation to travelers not otherwise warned to cross the tracks.

To support the allegation of negligence, the plaintiff offered the testimony of Mr. Owen, that as he approached the crossing he slowed down and watched the signal; that it showed clear until he was almost on the track and then flashed red when he was not more than eighteen feet away, and that he did not see or hear the engine until it was upon him some twenty feet away. As the decedent and the injured minor were riding as invited guests and took no part in the operation of the automobile, no question of their contributory negligence is raised. The engine struck the front of the automobile. A witness, Tatro, who was in a more elevated position from which he could see the automobile, the signal and the approaching train, testified to the same effect. Two occupants of another automobile about one hundred and fifty feet behind that of Mr. Owen were called by defendant, and their testimony on cross-examination tended strongly to corroborate that of Owen and Tatro. Tatro, who lived near the crossing, also testified that when a big heavy truck would go over the crossing the signal would drop and the bell ring, and that then another truck would come along and the bell stop ringing and the signal go up out of sight. Another witness testified that on May 7th, 1922, he saw a train go by when the signal did not show red at all. Another, that on one previous occasion before daylight he saw a train go by when the top light showed red, but the disc did not.

The defendant offered evidence to show that the

signal was so constructed and operated that it could not show clear except when the red disc was lifted up out of sight and held there by a continuously operative electro-magnetic force strong enough to overbalance the weighted disc, and that if the current weakened or the track circuits got out of order the disc would drop and remain at danger until the defect was repaired. Some of the defendant's witnesses testified that because of its construction and mode of operation the signal could not fail to show red as soon as an approaching train entered the distant end of either track circuit.

The defendant also offered testimony that the signal was tested directly after the accident by backing the train down to the distant end of the southerly track circuit, and found to operate properly; that the batteries had been renewed about two weeks before the accident, and that the signal had been observed and found to operate properly by an inspector passing over the line on trains and on motor cars running on the track on seven different days between the tenth and twenty-fifth days of May, 1922.

In view of this testimony, which was not contradicted, the defendant claims that even if the jury believed the plaintiff's witnesses, they could not reasonably find the defendant negligent as alleged.

It is, however, apparent that if the jury believed the plaintiff's witnesses, they did not credit the defendant's claim that the signal could not fail to give timely warning of the approach of a train. The inspector who testified to frequent inspection of the signal from passing trains was one of the witnesses thus discredited. What is more to the point is, that the jury may reasonably have thought that a system of inspection from passing trains would not throw much light on whether the signal always operated promptly when the train was still at a considerable distance from the crossing.

We think the jury might reasonably have found that at and before the date of the accident the signal was defective, in that it was liable at times not to operate promptly and give timely warning of an approaching train; that there was little, if any, evidence of inspection directed to the discovery of that particular defect prior to the accident; that the signal could not fail to give timely warning if maintained so that it operated as it was designed to operate; that both inspection and use were at the time of the injury in the control of the defendant, and that its defective condition was not in any degree due to any voluntary act on the part of the persons injured. These are the conditions which justify an application of the rule *res ipsa loquitur. Stebel* v. *Connecticut Co.*, 90 Conn. 24, 96 Atl. 171.

The inference of negligence which is permitted when these conditions exist is, of course, rebuttable; and the defendant attempted to rebut it, but for reasons indicated its rebuttal was not conclusive. The denial of the motions to set aside the verdicts as against the evidence was not erroneous.

As to the other ground for the motions, we cannot find that the damages awarded in either case were so excessive that the verdict ought not to stand. Within the statutory limit the amount of damages recoverable in actions for death caused by negligence is peculiarly within the province of the jury. *McKiernan* v. *Lehmaier*, 85 Conn. 111, 118, 81 Atl. 969. In the other case the verdict was only for $300, and the injuries justified a recovery of substantial damages.

There is no error.

In this opinion the other judges concurred.