NEW YORK, CHICAGO AND ST. LOUIS RAILROAD
COMPANY *v.* HENDERSON.

[No. 29,614. Filed December 12, 1957. Rehearing
denied January 15, 1958.]

458

*Batton, Harker & Rauch,* of Marion, *DeVoss, Smith & Macklin,* of Decatur, *Harker, Irwin & Campbell,* of Frankfort, and *Clay Marsteller,* of counsel, of Cleveland, Ohio, for appellant.

*Nieter & Smith, Maxwell Smith* and *Dan C. Flanagan,* all of Ft. Wayne, for appellee.

*Gerald G. Fuchs* and *John H. Jennings,* both of Evansville, *Amicus Curiae.*

ARTERBURN, J.—This case comes to us on petition to transfer from the Appellate Court under §4-215, Burns' 1946 Replacement. See *New York, Chicago & St. Louis R. Co.* v. *Henderson* (1956), 137 N. E. 2d 744, for opinion of the Appellate Court.

It is an action to recover for personal injuries alleged to have been sustained by appellee in a collision between an automobile driven by appellee and a railroad train operated by appellant. Upon a trial by jury a verdict for appellee in the amount of $12,000 was returned. Rhetorical paragraph 15 of the complaint upon which the action was based was amended to read as follows:

> "15. That unknown to this plaintiff there was then a train approaching said street crossing, but that defendant negligently failed to give any adequate warning or signal of said approaching train in that defendant failed to cause the gates guarding said street crossing to be closed, and failed to cause a bell to ring or a light to flash on signal devices maintained at said crossing by defendant and defendant carelessly and negligently ran said train from the east upon its tracks without blowing a whistle, sounding a horn, ringing a bell, or without giving any signal or notice whatever of its approach and negligently and carelessly ran said train upon and against plaintiff's said automobile."

Errors assigned include the overruling of appellant's motion for a directed verdict at the close of the evidence and the overruling of a motion for a new trial. The specifications in the motion for a new trial attack the sufficiency of the evidence to support the verdict, the

amount of damages, and certain instructions given by the court. A number of these alleged errors, we believe, may be disposed of in the consideration of the sufficiency of the evidence to support the verdict.

The evidence most favorable to the appellee tends to establish the following facts. The collision in question occurred at the intersection of Anthony Boulevard and appellant's railroad in the City of Ft. Wayne, Indiana about noon on November 10, 1953. Appellee just prior to the accident was driving south towards the crossing. Before reaching the crossing she traversed a steel bridge about 300 feet long which spans the Maumee River and continued further about 65 feet to the railroad crossing. The appellee was familiar with the crossing, having passed over it two or three times each week during the last two-year period. At times she was detained at the crossing by approaching trains and on these occasions she heard warning signals at the crossing and from the engine, and the gates were always down and flasher signals working. At the time of the accident as she approached this crossing, the evidence favorable to the verdict is that no bell or whistle were sounded or warning signal of any kind given. As she looked towards the crossing, she observed that the gates were up and the flashers were inactive. She testified that while crossing and as she left the bridge she looked both ways down appellant's tracks and did not see any approaching train. At that time she slackened her speed and she was driving about 15 to 20 miles per hour. As she entered the crossing, the north gate, which was operated by an automatic device, came down on her car. and one of the appellant's trains approached from the east, struck the front end of her car and threw it around against the part supporting the crossing gate,

and as a result she was injured. She was taken to the hospital for treatment of her injuries. The evidence shows three of her fingers were broken, including a fracture to the ring finger of her right hand which at the time of the trial was still stiff and painful. She could not at the time of the trial touch her thumb with her index finger. Appellee was 66 years old at the time of the accident. For 29 years she had supported her family by working in homes by cleaning, washing, ironing and doing laundry work, and for the last ten years she had earned approximately $30.00 per week. Since the accident she has been unable to do any work except with her left hand.

It will be noted that the above summary includes no facts showing directly what caused the failure of the automatic signaling devices and the gate to operate properly. This raises the question as to whether or not the jury may reasonably draw inferences of negligence from the failure of these devices to operate as they should. In other words, is the doctrine of *res ipsa loquitur* applicable?

Negligence, as any other fact or condition, may be proved by circumstantial evidence, and it has been urged that there is nothing distinctive about the doctrine of *res ipsa loquitur*, since it involves merely the permissible drawing of an inference of negligence from certain surrounding facts. This no doubt is true except that the law permits the inference of negligence to be drawn under certain sets of facts known as *res ipsa loquitur*. The basis or reasoning for this principle, in its origin at least, seemed to have been that the defendant had exclusive control over the injuring agency and the plaintiff normally had no access to any information about its control and operation. 3 Cooley on Torts (4th Ed.), Sec. 480, p. 369.

Frequently it is said the doctrine is applicable and negligence may be inferred "where the thing (injuring instrumentality) is shown to be under the management of the defendant or his servants and the accident is such as in the ordinary course of things does not happen if those who have the management use proper care." *Scott* v. *London & St. Katherine Docks Co.* (1865), 3 H. & C. 596, p. 601; 159 Eng. Rep. 665, p. 667.

The leading case which established the rule of *res ipsa loquitur* was *Byrne* v. *Boadle* (1863), 2 H. & C. 722, 159 Eng. Reprint 299. In this case the evidence merely showed that the plaintiff was struck by a flour barrel which fell from a window above the street. Barrels do not ordinarily fall out of windows unless someone is negligent, decided the court, and the court held the plaintiff had made out a prima facie case. Since then the doctrine has been applied to train derailment cases, falling objects, surgical and dental operations and treatment resulting in unusual injuries, and failure of mechanical devices within the exclusive control of the defendant, among various other sets of facts. As complicated mechanical devices of our modern age achieve greater perfection and greater reliance upon them is justified, it follows that the doctrine has a broader application than originally.

Appellant attempts to make a distinction in cases where *res ipsa loquitur* applies by classifying those cases in which there is an allegation of "defective equipment" causing the injury from those cases in which there is a mere failure of the defendant to operate such equipment. There is no direct allegation of defective equipment made in the complaint. Although a vast number of cases involve defective equipment and devices, we fail to follow the reasoning

of the appellant for making such a limitation. In fact, the history and the operation of the doctrine does not bear out such a contention. No device whatever was involved in the case where a flour barrel rolled out of an upper window causing an injury; and it is well settled that the doctrine applies to cases where sponges have been left in patients following operations and other like situations.

The appellant contends that it assumed the burden of going forward with the proof by offering evidence which showed that it had maintained a proper inspection and tests of the mechanical safety gate and warning devices at the railroad crossing. The testimony on this point was that these tests were made a few hours before the collision and also immediately afterwards, and that the devices were in proper operation at the time of these inspections. Accordingly, appellant insists the rule as set forth in *Worster* v. *Caylor* (1953), 231 Ind. 625, 110 N. E. 2d 337, is applicable and that upon such testimony and evidence offered by the appellant the doctrine of *res ipsa loquitur* vanishes from the case. We have examined this case and are unable to approve all that is said with reference to that principle of the law, and in particular, the following statement:

> "It will be noted that the doctrine *res ipsa loquitur* does not prevail where the party against whom it might apply accepts the duty of going on with the proof and details the entire transaction. In such a situation the presumption, inference or doctrine ceases to exist and all questions concerning the injury must be determined from the evidence unaided by the inference or doctrine of *res ipsa loquitur.*" *Worster* v. *Caylor* (1953), 231 Ind. 625, 632, 110 N. E. 2d 337.

The rule stated in this case is a departure from the

principle as previously followed in this state in the following cases among others: *Cleveland, etc. R. Co.* v. *Hadley* (1907), 170 Ind. 204, 40 Ind. App. 731, 82 N. E. 1025, 84 N. E. 13; *The Louisville, New Albany & Chicago Ry. Co.* v. *Thompson, Admr.* (1886), 107 Ind. 442, 8 N. E. 18, 9 N. E. 357, 57 Am. Rep. 120; *The Cleveland, Columbus, Cincinnati and Indianapolis R. R. Co.* v. *Newell* (1885), 104 Ind. 264, 3 N. E. 836, 54 Am. Rep. 312; *Kickels* v. *Fein* (1937), 104 Ind. App. 606, 10 N. E. 2d 297; *Wass* v. *Suter* (1949), 119 Ind. App. 655, 84 N. E. 2d 734.

The *Worster* v. *Caylor* case converts the doctrine from a rule of evidence to one of procedure. It would be meaningless and of no practical value since any defendant could offer some explanation, thereby taking the doctrine out of the case and forcing the jury to accept and believe the explanation of a defendant whether credible or not. Under such a rule of procedure the plaintiff's case is placed at the mercy of the defendant.

We are not unmindful of the importance and the desirability of stable principles of law upon which litigants may rely, but where a rule announced in an opinion works an obvious injustice upon litigants and is not supported by any authority that we can find, it should be eliminated from the body of precedents of this jurisdiction.[1]

1. An examination of the authorities cited in connection with the above statement in the Worster case fails to support such a principle. Likewise the quotation taken from 38 Am. Jur., Negligence, §295, p. 989, does not accurately quote or represent the law as stated in *Sweeney* v. *Erving* (1913), 228 U. S. 233, 57 L. Ed. 815, 33 S. Ct. 416; however, 38 Am. Jur., Negligence, §298, p. 994 does say: *"Res ipsa loquitur* creates an inference or presumption of negligence that constitutes evidence of negligence which may not be disregarded by the jury, or court sitting without a jury, but is to be weighed and considered as against the evidence adduced by the defendant in rebuttal thereof."

Under the true rule of *res ipsa loquitur* the inference of negligence which is drawn from the facts is placed in the scales to be weighed with any and all explanations offered by the defendant. The inference of negligence or, as sometimes stated the "presumption," does not vanish when the defendant comes forward with an explanation but on the contrary stays in the case to be considered with all other evidence by the triers of the fact. The weight to be given this inference and its relationship to all the other evidence is solely for those determining the facts.

If we treat this doctrine as giving rise to a permissible inference of negligence which may be drawn from a certain set of facts as may be done from circumstantial evidence, no confusion should result in its application in a trial.

Appellant claims that the allegations as to acts of negligence are made in the conjunctive and jointly, and therefore, the proof must show all acts concurring. We fail to find any support or reason for such a rule. It is fairly well settled that multiple acts of negligence which caused the same injury may be stated in one paragraph of complaint; and recovery may be had upon proof of any one of such acts unless it is a dependent act alleged to have concurred with another not proved and without the existence of which the accident could not have occurred. As a matter of practical pleading and convenience, it would seem to be unrealistic to require separate items of negligence each alleged to have caused the same injury to be set out separately in numerous paragraphs of complaint. Rules with reference to amending a complaint to conform with the proof would in most instances be applicable to avoid the result insisted upon

by appellant. Acts 1881 (Spec. Sess.), ch. 38, §135, p. 240; 1921, ch. 115, §1, p. 277; 1941, ch. 72, §1, p. 185, being §2-1068, Burns' 1946 Replacement; Lowe's Works Ind. Prac., Vol. I, §13.66, p. 488.

Gavit makes the following statement:

"It has been recognized as proper also that a plaintiff may make cumulative allegations as to the same cause of action in one paragraph of pleading where the allegations are not repugnant or inconsistent. The most common example is in the negligence cases where it is recognized that the plaintiff may make any number of specific allegations as to what constituted the defendant's negligent conduct. The accepted rule has been that a demurrer to such a complaint should be overruled if any specific allegation is sufficient." I Gavit, Indiana Pleading and Practice, §133, p. 647.

There are cases involving the allegation of several breaches of a bond or contract or several alleged defamatory statements, in which the court has accepted the common law rule and regarded each allegation as a separate claim although contained in one paragraph. *Johnnie J. Jones Expositions* v. *Terry* (1945), 116 Ind. App. 189, 63 N. E. 2d 159; *Knickerbocker Ice Co.* v. *Gray* (1908), 165 Ind. 140, 171 Ind. 395, 84 N. E. 341; *Pittsburgh, etc. R. Co.* v. *Lightheiser* (1906), 163 Ind. 247, 168 Ind. 438, 78 N. E. 1033; *The State ex rel. Sidener* v. *White et al.* (1883), 88 Ind. 587.

Appellant further argues that if specific allegations of negligence are made in a complaint, recovery under the principles of *res ipsa loquitur* is excluded. The allegations in the complaint are not specific as to why the signal devices and gate did not properly operate. It alleges generally that "the defendant failed to cause the gates guarding said street crossing to be closed and failed to cause a bell to ring," etc.

These are general allegations and do not point out the detailed facts causing the defect or failure which is within the knowledge of the appellant Railroad Company.

However, Harper and James in their recent Treatise on the Law of Torts make the following clear analysis of this point:

"It has occasionally been held that a plaintiff who pleads specific items of negligence thereby precludes himself from the benefit of res ipsa loquitur even though the proof makes out a case where it would otherwise apply. The reason given for the rule is that such a plaintiff shows he has access to the facts and therefore is not in need of a doctrine designed to aid plaintiffs who lack this access. Such a rule is generally repudiated and is altogether indefensible.

"It may (to be sure) fairly be urged that the pleadings must lay a basis for the application of the doctrine in any given case, but this rule of fairness should be administered in accordance with the liberal principles of modern pleading and not according to any rule of thumb. Thus, as we have seen, the proof in a res ipsa loquitur case seldom points to a single specific act or omission. Typically, it points to several alternative explanations involving negligence (e.g., negligence in construction, maintenance, or operation) without indicating which of them is more probable than the other. In such a case the pleadings may well be required to cover the alternative explanations, so as to give fair notice to the adversary of the scope of the case he has to meet. In practice this usually is not a very onerous requirement and can be met either by broad generality of allegations, or by listing all the specific acts or omissions to which the proof may point, or by combining general with specific allegations. And even if the pleadings fall short in this respect, free use of amendment should be allowed and the pleadings treated as amended where defendant's proof has been directed to all the claimed explanations so that the matter may be treated as litigated by consent. Only in a case where

defendant has been genuinely and justifiably misled by the pleadings so that he has actually failed to prepare a defense to a case based on the doctrine should its application be denied on the basis of the pleadings." Harper and James, Torts, Vol. 2, §19.10, pp. 1096, 1097; 1 Gavit, Indiana Pleading & Practice, Sec. 147(e), p. 679.

In some cases the pleader may be uncertain as to what details will develop from the evidence at the trial, particularly from the mouths of adverse witnesses. The evidence may show specifically the proximate cause and then again nothing may be shown aside from the basic facts from which the inference of negligence arises under *res ipsa loquitur*. *Baltimore, etc. R. Co.* v. *Hill, Admr.* (1925), 84 Ind. App. 354, 148 N. E. 489.

Since the doctrine of *res ipsa loquitur* is to some extent based upon the theory that the facts connected with the cause of the injury are unknown to the plaintiff and within the peculiar knowledge of the defendant it would also follow from the general rules of pleading that in such cases the plaintiff is not compelled to allege the specific facts coming within the special knowledge of the defendant. Lowe's Works Ind. Prac., Vol. I, §12.17, p. 370.

It is next argued that regardless of the allegations in the complaint if the plaintiff offers evidence of specific acts of negligence this will exclude *res ipsa loquitur* from the case. Such is not necessarily true since the facts still speak for themselves. Of course, if the uncontradicted evidence excludes by its very nature an inference of negligence on the part of the defendant, such as proof that "an act of God" or an intervening agency over which the defendant had no control caused the injury, there would be no liability. *Leet* v. *Union Pac. R. R. Co.* (1944), 25 Cal. 2d 605, 155 P. 2d 42, 158

A. L. R. 1008, Cert. den. 325 U. S. 866, 89 L. Ed. 1986, 65 S. Ct. 1403; *Gray* v. *Baltimore & O. R. Co.* (1928), 24 Fed. 2d 671, 59 A. L. R. 461. But such a situation in a trial would be rare, since the plaintiff would be proving himself out of court. 38 Am. Jur., Negligence, §299, p. 996; Harper & James, Law of Torts, Vol. 2, §19.10, p. 1098; Prosser, Law of Torts (2d Ed.) (1955), pp. 211 and 214.

There is no reason in law why a plaintiff may not offer such evidence as may be available tending to show specifically the items of negligence and still rely ■ upon the inference also permitted under *res ipsa loquitur.* A number of different causes or inferences may be thus left to the final determination of the triers of the facts.

Appellant contends that the evidence shows without contradiction that appellee was guilty of contributory negligence as she approached the railroad ■ crossing, in failing to use due care in looking and listening. In this connection reference is made to the statute requiring a person driving a vehicle to stop within 50 feet but not less than 10 feet of the railroad tracks before crossing when:

"(a) A clearly visible electric or mechanical signal device gives warning of the immediate approach of a train.

"(b) A crossing gate is lowered or when a human flagman gives or continues to give a signal of the approach or passage of a train.

"(c) A railroad train, as defined in this act, approaching within approximately one thousand five hundred [1,500] feet of a highway crossing emits a signal audible for such distance and such train, by reason of its speed or nearness to such crossing, is an immediate hazard.

"(d) An approaching train is plainly visible and is in hazardous proximity to such crossing." Acts

1939, ch. 48, §100, p. 289, being §47-2114, Burns' 1952 Replacement.

The evidence here was in conflict on all these conditions, including whether or not the bridge obstructed the view of the appellee's approach to the crossing. This left the question as to the facts making the statute applicable for the jury. Acts 1939, ch. 38, §100, p. 289, being §47-2114, Burns' 1952 Replacement; *Dommer* v. *Pennsylvania R. Co.* (1946) (C. C. A. 7th Cir.), 156 Fed. 2d 716; *New York, etc. R. Co.* v. *First, etc. Savings Bank* (1926), 198 Ind. 376, 153 N. E. 761; *Pearson* v. *Baltimore & Ohio R. Co.* (1953), 200 Fed. 2d 569.

Judge Swaim, speaking for this court, said in *Bartley* v. *Chicago & E. I. R. Co.* (1939), 216 Ind. 512, at page 522, 24 N. E. 2d 405:

> "As he approached the tracks of the appellee Railway Company the appellant had a right to assume that any train of appellee Railway Company approaching Heidelbach Avenue would give the required statutory signals by bell and whistle, warning him and other travelers on Heidelbach Avenue of the approach of such train, §55-1243, Burns' 1933, §14557, Baldwins' 1934. The failure of the Railway Company to give such signals not only is negligence *per se* on the part of the Railway Company, but is a fact which the jury may properly consider, together with other pertinent facts, in determining the question of whether appellant was guilty of contributory negligence as he approached said crossing and prior to the time he saw or could have seen the approaching train."

Judge Achor reiterated these same principles while on the bench of the Appellate Court of this State in *Gillies by next Friend* v. *N. Y. C. R R. Co.* (1954), 124 Ind. App. 382, 116 N. E. 2d 555.

In this connection it is argued that if there exists a question of contributory negligence for the jury to determine, such a possibility of contributory negligence

would exclude the doctrine of *res ipsa loquitur*, because under that principle, the injuring instrument must be under the exclusive control of the defendant, with no opportunity for the plaintiff's conduct to contribute, influence, or cooperate with the factors which caused the injury. We can find no sound authority for such a limitation on the principle. It is true the doctrine as generally stated is operative where the factors causing the injury are within the control and knowledge of the defendant. This statement, so frequently made in defining the doctrine, appears to rest merely upon a rationalization of the principle sometimes stated in another way, namely, that if the plaintiff normally has no access to the information and details about the operation and control of the thing which caused the injury, then the plaintiff is not obligated to attempt to plead or prove the exact details of the alleged failure or improper operation. The law then *permits* the drawing of an inference of defendant's negligence.

The mere fact of a collision between an automobile and a train at a railroad crossing, without more, raises no inference of negligence on the part of any of the parties involved. However, where it is shown that signalling devices or a safety gate at the crossing did not operate, the doctrine of *res ipsa loquitur* is applicable to the extent that the jury may draw a permissible inference of negligence by reason of the failure of such devices to operate properly which were under the exclusive care and control of the Railroad Company. It should be noted, however, that the drawing of such inference in itself does not fix the proximate cause of the accident, but the jury must still determine the proximate cause, even though such permissible inference of negligence is drawn. The doctrine of *res ipsa loquitur* is not a rule which fixes the proxi-

mate cause of an injury, but only a rule of evidence allowing a permissible inference of negligence under a certain set of facts *Hunt* v. *Central Vermont Railway Co.* (1923), 99 Conn. 657, 122 Atl. 563; 38 Am. Jur. Negligence, §298, p. 994.

There is no more reason for taking the permissible inference under *res ipsa loquitur* out of a case because evidence of contributory negligence is presented than there is because evidence of any explanation, or of inspection, care and maintenance is given by the defendant. Such a contrary conception would unduly restrict the fact-finding duties of a jury.

The possible existence of contributory negligence of a plaintiff does not eliminate from the case *res ipsa loquitur* where otherwise properly applicable, nor take from the jury the privilege of drawing an inference of negligence under such facts. The possibility of contributory negligence does not alter the fact that the safety gates, flasher signals and bells were under the exclusive control of the Railroad defendant and the appellee has no knowledge as to the cause of their failure to operate. See: *Pittsburgh, etc. R. Co.* v. *Boughton* (1924), 81 Ind. App. 129, 142 N. E. 869.

The appellant offered evidence for the purpose of proving the contributory negligence of the appellee in failing to look and listen and use due caution at the railroad crossing. The jury had the right to consider this evidence and weigh it along with the permissible inference of negligence raised by the surrounding circumstances under *res ipsa loquitur*. It could reject either the permissible inference of negligence to be drawn from the surrounding circumstances or reject the evidence offered by the appellant to establish the

sole negligence or contributory negligence of the plain-tiff. From the verdict rendered by the jury, we may assume that the evidence offered by the appellant in an attempt to establish the contributory negligence of appellee, did not satisfy the jury, while the permissible inference of negligence from the failure of the automatic signaling device to operate, which was under the control of the ` appellant Railroad Company, was accepted and relied upon for its verdict. *Jesionowski* v. *Boston & Maine Railroad* (1946), 329 U. S. 452, 67 S. Ct. 401, 91 L. Ed. 416, 169 A. L. R. 947; Prosser, Torts (2nd Ed.), §42, p. 209.

Appellant also contends that it is not guilty of negligence by reason of the failure to sound a whistle on the locomotive because of an ordinance of the City of Fort Wayne, which reads as follows:

"Sec. 3. Blowing Whistle.

It shall be unlawful for any person running or controlling any locomotive to sound the whistle thereof or allow the same to be sounded within the corporate limits of the city, unless to prevent accidents that cannot otherwise be arrested."

The same question raised has been presented and decided adversely to appellant's contention in the case of *Chicago, etc. R. Co.* v. *Lake Co. Savings, etc. Co.* (1917), 186 Ind. 358, 114 N. E. 454.

From what has been said, it may be seen, we have come to the conclusion that there was sufficient evidence to support the verdict in this case. Likewise, the trial court committed no error in refusing to direct a verdict for the appellant and in giving appellee's Instruction No. 6, which invoked the doctrine of *res ipsa loquitur* in this case. In the latter connection we further note that this instruction was given practically verbatim in *Pittsburgh, etc. R. Co.* v. *Boughton* (1924),

81 Ind. App. 129, 142 N. E. 869, and there approved by the Appellate Court. *Wass* v. *Suter* (1949), 119 Ind. App. 655, 84 N. E. 2d 734; *Cleveland, etc. R. Co.* v. *Hadley* (1907), 170 Ind. 204, 40 Ind. App. 731, 82 N. E. 1025, 84 N. E. 13, 16 L. R. A. (N. S.) 527.

Objection is made to Instruction No. 2, tendered by the appellee and given by the court, in which the jury was charged in fixing any damages, to "take ▪ into consideration her (appellee's) loss of time, her pain, suffering, her mental anguish and distress, her permanent injuries if any you find to exist." Appellant's objection is based upon the claim that there is no evidence of mental anguish. There was no objection made on the ground that such damages were not alleged or in issue under the allegations of the complaint. Any contention appellant might make on that point is waived and we need not consider or decide that point. The case of *Chicago, etc. R. Co.* v. *Blankenship* (1926), 85 Ind. App. 332, 154 N. E. 44 cited by appellant, turns on the point that mental anguish was not alleged as special damages. We cannot find that it has ever been cited with approval.

> "It is well established that in actions for personal injuries the recoverable damages may include compensation for mental suffering caused by such injuries and follows or accompanies them as a proximate consequence of the defendant's wrongful act. A reason given for the rule is that the mind is a part of the body, and an injury to the body includes the whole, and its effects are not separable. In such cases the mental suffering is merely an aggravation of damages when it naturally ensues from the act complained of." 15 Am. Jur. Damages, Sec. 176, pp. 593-4.

It has long been the law in this state that the triers of the facts may infer mental and physical suffering

which would naturally flow from a personal injury proved. Nearly a hundred years ago this court said, in *Cox* v. *Vanderkleed* (1863), 21 Ind. 164:

"The instruction complained of is as follows: 'In assessing damages you may consider the injuries inflicted on the plaintiff by the blow given by the defendant, the expenses incurred, loss of time and hearing, also his peace of mind and individual happiness occasioned by the injury received.' This instruction is sustained by the case of Taber v. Hutson, 5 Ind. 322, and it seems to us to be correct in principle."

This case has been cited with approval a number of times, one of which citations makes the following statement:

"It is well settled in Indiana that personal disfigurement or deformity, resulting from negligent injury, is a proper element to be considered in estimating damages, and such 'anxiety and distress of mind, as are fairly and reasonably plain consequences of the injury complained of' are proper elements of damage." *Harrod* v. *Bisson* (1911), 48 Ind. App. 549, 93 N. E. 1093.

In *General, etc. Car Corp.* v. *Melville* (1926), 198 Ind. 529, p. 540, 145 N. E. 890, we said:

"There was evidence that plaintiff's left leg was crushed off and left lying in the street, that he was otherwise severely injured, that he suffered pain in his head and legs, that his right leg was not so fleshy after as before the accident and his right ankle had become crooked and still pained him at the time of the trial, and was still swollen, that he was in the hospital four weeks, that he had not worked any since the injury, and evidence of other similar facts. This evidence was sufficient to justify an instruction that the jury might consider both the mental and physical pain and suffering, if any, that plaintiff had endured from his injuries

"or would endure in the future, if any at all, caused by and arising out of his physical injury."

The jury has the right to use human experience in determining the anguish, anxiety and other suffering both physical and mental (if there is a differentiation) that naturally flows from a physical injury, disfigurement or resulting incapacity caused to a person. Such proof may be made either by direct or circumstantial evidence. It may be inferred from the nature of the appellant's injury, her age, the necessity for her employment and resulting appearance in public and the incapacities caused by the injury. There was no error in the instruction. 2 Restatement, Torts §456; McCormick on Damages, §88, p. 316; *Harness* v. *Steele* (1902), 159 Ind. 286, 64 N. E. 875; *Heddles* v. *The Chicago & Northwestern R. Co.* (1890), 77 Wis. 228, 46 N. W. 115; *Merrill* v. *Los Angeles Gas & Electric Co.* (1910), 158 Cal. 499, 111 Pac. 534, 139 Am. St. Rep. 134, 31 L. R. A. (N. S.) 559; *M. K. & T. Ry. Co.* v. *Miller* (1901), 25 Tex. Civ. App. 460, 61 S. W. 978.

We have examined the other instructions and objections made thereto by the appellant and we find none of the objections made are sufficiently specific to warrant their consideration on appeal. Appellant contends, however, that although the objections at the time they were made may not have been as specific as set forth in the argument section of its brief, still the court should grant some liberality and latitude in its consideration of them because under the stress and strain of trial and the time limitations, such instructions could not be given the study necessary for discovering the claimed errors.

Erroneous instructions constitute reversible error

only when they have influenced the verdict. If learned counsel are not able promptly to perceive the alleged error at the time the instructions are given to the jury, it is not likely that the jury would notice them sufficiently to be affected thereby. Courts, as well as the lawyers, are often too prone to over-emphasize the semantics in connection with instructions, and as a result, slight shadings in the meaning or context of an instruction are exaggerated far beyond the influence they may have had upon a jury.

One of the main purposes of requiring that an objection to an instruction be made before it is given to the jury, is to give the trial court an opportunity to correct any error if it exists. If this is not done promptly and *specifically*, the alleged error is waived on appeal. The objections as made to the instructions referred to above were not specific enough to point out to the trial court any correction or alteration therein if the error existed.

The sole remaining contention is that the verdict of $12,000 was excessive. In view of the evidence which shows the injuries incapacitating the appellee from work necessary for the support of herself, her invalid husband and two girls in the family, we cannot say that the sum is excessive.

The judgment of the trial court is affirmed.

Emmert, C. J., concurs with separate opinion.

Bobbitt, J., dissents with opinion.

Achor and Landis, JJ., concur.

### CONCURRING OPINION

EMMERT, C. J.—The Indiana cases on *res ipsa loquitur* generally support the definition given in *Pittsburgh, etc. R. Co.* v. *Arnott, Admx.* (1920), 189 Ind. 350, 368, 126 N. E. 13, which is as follows:

"It is well settled that, when the instrumentalities which produce an accident are under the exclusive charge of the defendant or his servants, and when the accident is such as does not occur in the ordinary course of events if those in charge use proper care, proof of the accident is sufficient to create a *prima facie* case of negligence, which will prevail unless it is met by evidence to show that the accident could not have been avoided by due care on the part of the defendant."

See *Prest-O-Lite Co.* v. *Skeel* (1914), 182 Ind. 593, 599, 600, 106 N. E. 365; *Wass* v. *Suter* (1949), 119 Ind. App. 655, 659, 84 N. E. 2d 734.[1]

It is a rule of evidence. *Fleming* v. *Pyramid Coal Corp.* (1951), 122 Ind. App. 41, 44, 100 N. E. 2d 835; *Wass* v. *Suter* (1949), 119 Ind. App. 655, 84 N. E. 2d 734, *supra.* It does not dispense with the rule that he who alleges negligence must prove it by a fair preponderance of the evidence. *Kickels* v. *Fein* (1937), 104

1. "This doctrine has been generally defined to mean that when the thing which caused the injury to the plaintiff was under the control and management of the defendant or his servants, and the occurrence was such that in the ordinary course of things would not happen if those who had its control and management use proper care, that this affords reasonable evidence, in the absence of explanation by the defendant, that the injury arose from or was caused by the defendant's want of care; that under such circumstances there is a prima facie case of negligence. 45 C. J. 1193, §768; 38 Am. Jur. 989, §295; *Union Trac. Co. of Indiana* v. *Berry, Admr.* (1919), 188 Ind. 514, 530, 121 N. E. 655, 124 N. E. 737, 32 A. L. R. 1171; *City of Decatur* v. *Eady, Execrx.* (1917), 186 Ind. 205, 218, 115 N. E. 577." *Wass* v. *Suter* (1949), 119 Ind. App. 655, 659, 84 N. E. 2d 734.

"In our opinion, *res ipsa loquitur* means that the facts of the occurrence warrant the inference of negligence, not that they compel such an inference; that they furnish circumstantial evidence of negligence where direct evidence of it may be lacking, but it is evidence to be weighed, not necessarily to be accepted as sufficient; that they call for explanation or rebuttal, not necessarily that they require it; that they make a case to be decided by the jury, not that they forestall the verdict. *Res ipsa loquitur,* where it applies, does not convert the defendant's general issue into an affirmative defense. When all the evidence is in, the question for the jury is whether the preponderance is with the plaintiff." *Sweeney* v. *Erving* (1913), 228 U. S. 233, 240, 33 S. Ct. 416, 57 L. Ed. 815, 819.

Ind. App. 606, 615, 10 N. E. 2d 297; 65 C. J. S. 993, 994, §220(3). It does not create a *prima facie* presumption of negligence. "A presumption is a rule which the law makes upon a given state of facts; an inference is a conclusion which, by means of data founded upon common experience, natural reason draws from facts which are proven." *Ensel* v. *Lumber Insurance Company of New York* (1913), 88 Ohio St. 269, 282, 102 N. E. 955. When the proponent has introduced evidence of facts bringing the rule into operation, the rule says the facts are *prima facie* evidence of negligence; he has made a case sufficient to go to the jury, and the jury is entitled to draw the inference that the opponent was guilty of negligence. The cases generally hold that although the burden of proof has not shifted, the duty of coming forward with evidence to explain what happened lies with the opponent.

If the plaintiff's facts make out a *prima facie* case of negligence under *res ipsa loquitur*, I am unable to see how the rule can vanish from the case when the defendant offers testimony in explanation of the accident, as some of the cases seem to indicate. The facts that constitute *prima facie* evidence of negligence at the end of the plaintiff's evidence in chief are still *prima facie* evidence after the defendant introduces his evidence in explanation of the accident. Generally, when the cause is being tried by a jury, the court is not permitted to judge the credibility of the witnesses and weigh the evidence and hold as a matter of law that the defendant's testimony is true, and but one inference could be drawn therefrom, to-wit: the defendant was not guilty of negligence. Negligence only becomes a question of law when the facts are not in dispute, and no reasonable man could find the defendant has

been guilty of negligence. The same principle applies to contributory negligence. *Gamble* v. *Lewis* (1949), 227 Ind. 455, 85 N. E. 2d 629. But in a case where the rule of *res ipsa loquitur* is properly invoked, the defendant is only required to offer evidence balancing that offered by the plaintiff; he is not required to prove by preponderance of the evidence he was not guilty of negligence.

I believe *Worster* v. *Caylor* (1953), 231 Ind. 625, 110 N. E. 2d 337, was correctly decided upon the facts, and it should not be overruled. There the plaintiff as a part of the case in chief introduced the testimony of the defendant surgeon who performed the operation. The plaintiff undertook the burden of proving all the facts of the injury so there was no necessity to invoke the rule of *res ipsa loquitur*. The plaintiff offered evidence to prove what happened by the witness who knew more about what happened than anyone else. When the plaintiff made the defendant his own witness and had him testify in full about the operation, he cannot then be heard to say that the duty of coming forward with the evidence rested upon the defendant. In fact, there was no evidence left to come forward with. It matters not that the defendant doctor was a hostile witness. The plaintiff did not have to present him as his witness, and then he would have been entitled to the benefit of the rule. By overruling *Worster* v. *Caylor, supra,* this court gets itself in the impossible position of holding that a plaintiff can introduce as his witnesses all those who know anything about what may have caused the accident so that there is no evidence left for the defendant to come forward with, and yet the defendant would still have the duty of coming forward with evidence to explain the accident. The rule in *Worster* v. *Caylor, supra,* was sound upon

logic and principle, and precedent should not be over-ruled when the reason still exists for the rule and prin-ciple. It is true that when the reasons for a rule cease to exist the rule should cease, or when there never was any reason for the rule in the first place it should cease, but *Worster* v. *Caylor, supra,* is not that kind of a case.

I fail to see why the rule of *res ipsa loquitur* cannot be invoked in a railroad crossing collision where the non-operation of automatic signals and gates are charged as acts of negligence. They are under the ex-clusive control of the railroad company, the Indiana rule is that where they are not in operation to warn travelers, the jury may draw the inference that non-operation was an implied invitation to the traveler to cross the railroad tracks. *Gillies* v. *New York Cent. R. Co.* (1954), 124 Ind. App. 382, 116 N. E. 2d 555; *Louisville & N. R. Co.* v. *Revlett* (1946), 224 Ind. 313, 65 N. E. 2d 731. The traveling public generally relies on the non-operation of an automatic signal as an in-vitation to cross the tracks. It is proper for the jury to take the non-operation of such signals into con-sideration in determining whether or not the plaintiff had been guilty of contributory negligence. The jury has determined that no contributory negligence was proved and the defendant had the burden on this issue. This record does not present a case where no reasonable man could find the plaintiff was free from contributory negligence.

Section 47-2114, Burns' 1952 Replacement, which is §100 of the Uniform Act Regulating Traffic on High-ways, is another example of poor draftsmanship in a uniform act. It regulates the conduct of an automo-bile driver at a railroad crossing at grade. For ex-ample, it often happens that a driver cannot stop his car within 50 feet from the crossing, due to the fact

other cars have stopped in front of him, but the wording of the statute is he shall stop within 50 feet of the crossing. The section says he shall not proceed until he can do so safely under various crossing situations enumerated in four subsections, which are not stated disjunctively or conjunctively. Clearly the word "or" should have been the last word at the end of subsections (a), (b) and (c). But I do not believe it was the expressed legislative intention to prohibit a traveler from proceeding only when the factual situation fell within all the subsections. Subsection (b) applies to a crossing where there is a crossing gate or a human flagman. Many crossings having automatic flasher signals do not have crossing gates or a human flagman. Yet if we give a conjunctive construction to all the subsections, the traveler would not be prohibited from crossing when a train was approaching, and the red flasher signals operating, simply because no automatic gate was down or no human flagman giving a warning. The reasonable construction of the entire section is the traveler driving a motor vehicle should stop not less than 10 feet from any railroad crossing at grade, and not proceed until he can do so safely when a factual situation is presented covered by any of the four subsections.

The general rule on the effect of an erroneous instruction was clearly stated by this court in *American Employers' Ins. Co.* v. *Cornell* (1948), 225 Ind. 559, 569, 570, 76 N. E. 2d 562, 566, as follows:

"... It is true that prejudice from an erroneous instruction is presumed unless the contrary affirmatively appears and in considering the effect of an erroneous instruction this court assumes that the error influenced the result unless it appears from the interrogatories, the evidence, or some other part of the record that the verdict

under proper instructions could not have been different. *Probst, Receiver* v. *Spitznagle* (1939), 215 Ind. 402, 408, 19 N. E. (2d) 263; *City of Decatur* v. *Eady* (1917), 186 Ind. 205, 217, 115 N. E. 577."[2]

However, to this general rule there is an exception where a general instruction on damages enumerates various items thereof, and the questioned item is followed by the words "if any." In such case we have held the jury must have understood such item should not be considered unless there was some proof of such loss. *Lincoln Operating Co.* v. *Gillis* (1953), 232 Ind. 551, 560, 114 N. E. 2d 873; *McClure* v. *Miller* (1951), 229 Ind. 422, 428, 98 N. E. 2d 498. Even if appellant's contention that appellee's requested instruction No. 2 was unsupported by any evidence of mental anguish, it was not reversible error since it was limited by providing "if any you find to exist." But mental anguish and mental suffering which naturally and proximately flow from an injury are not fictitious or imaginary. Such elements of damages should not be denied by the law which seeks to provide a remedy for every wrong. I agree with the majority opinion that the jury could properly award compensation for "mental anguish and distress."

I concur with Judge Arterburn's opinion as to other contentions of error, and vote to affirm the judgment.

2. "Our books are full of cases which hold that instructions should be relevant to the issues and pertinent to the evidence, and if an instruction is given concerning a fact or set of facts to which no evidence has been adduced, it will be reversible error unless it clearly appears that the party affected was not harmed thereby. We cite only the following: *Cleveland, etc., R. Co.* v. *Case* (1910), 174 Ind. 369, 91 N. E. 238; *Chicago & Eastern Illinois Ry. Co.* v. *Whipking* (1933), 96 Ind. App. 167, 170 N. E. 548; *Bachus, Admx.* v. *Ronnebaum* (1934), 98 Ind. App. 603, 186 N. E. 386; see also *Loeser* v. *Simpson* (1942), 219 Ind. 572, 39 N. E. 2d 945." *Hayes Freight Lines* v. *Oestricher* (1946), 117 Ind. App. 143, 147, 66 N. E. 2d 612.

### Dissenting Opinion

Bobbitt, J.—I dissent from the majority opinion for the following reasons:

*First:* As one of the grounds for transfer it is asserted that the opinion of the Appellate Court contravenes a ruling precedent of this court in *Worster* v. *Caylor* (1953), 231 Ind. 625, 110 N. E. 2d 337, on the question of *res ipsa loquitur*, because appellant herein allegedly did not "detail all the facts" as was done in that case.

In the Worster Case the plaintiff (appellant) called the defendant (the doctor who performed the operation) as his (appellant's) witness and as such he detailed fully and without reservation all the facts concerning the operation including the accidental perforation of the bowel — which was the negligence charged in the complaint. We held there, and correctly so, that under such circumstances the "presumption or inference of *res ipsa loquitur* disappeared from the case."

At page 632 of 231 Ind. we stated the general rule as follows:

> " ' "Where the circumstances of the occurrence that has caused the injury are of a character to give ground for a reasonable inference that if due care had been employed by the party charged with care in the premises, the thing that happened amiss would not have happened," negligence may fairly be inferred *in the absence of any explanation.*' (Our emphasis.) 38 Am. Jur., Negligence, §295, pp. 989, 991. *Sweeney* v. *Erving* (1913), 228 U. S. 233, 238, 33 S. Ct. 416, 57 L. Ed. 815, 818."

In the Worster Case the party seeking to apply the doctrine went forward with the proof and fully de-

tailed the facts which caused the accident. It seems evident beyond dispute that under such a circumstance there was no place for any inference of negligence because the alleged negligent act was described and explained in detail by the plaintiff's own direct evidence.

By calling the defendant who performed the operation out of which the alleged negligent act arose, plaintiff-Worster was able to show the particular act of negligence that allegedly caused the injury, and by so doing he removed the circumstance which had, or might have, invoked the doctrine of *res ipsa loquitur*. When the reason for the rule was removed, it then followed, as Judge Gilkison said: *"res ipsa loquitur* disappeared from the case."

The *prima facie* case which the operation of the rule had established was overthrown by the detailed explanation of how the injury occurred, and from then forward the plaintiff's case depended upon the factual situation presented by all the evidence together with any reasonable inferences which might be drawn therefrom, unaided by any conclusion which, in the absence of explanation or rebuttal evidence, the jury was permitted to draw from the fact of the injured intestine.

The doctrine of *res ipsa loquitur* is merely a rule of evidence. 38 Am. Jur., Negligence, §298, p. 994.

> "The application of the doctrine is based on the theory that under the special circumstances which invoke its operation, the plaintiff is unable to show the particular act of negligence which caused the injury or that the defendant is in a better position to do so." *Wass* v. *Suter* (1950), 119 Ind. App. 655, 661, 84 N. E. 2d 734.

The Appellate Court has defined *res ipsa loquitur* in *Wass* v. *Suter, supra,* at page 659 of 119 Ind. App., as follows:

"This doctrine has been generally defined to mean that when the thing which caused the injury to the plaintiff was under the control and management of the defendant or his servants, and the occurrence was such that in the ordinary course of things would not happen if those who had its control and management use proper care, that this affords reasonable evidence, in the absence of explanation by the defendant, that the injury arose from or was caused by the defendant's want of care; that under such circumstances there is a prima facie case of negligence." Citing authorities.

There seems to me to be no serious conflict between the above statement and that made by this court in *Worster* v. *Caylor, supra* (1953), 231 Ind. 625, at page 632, 110 N. E. 2d 337, as follows:

"It will be noted that the doctrine *res ipsa loquitur* does not prevail where the party against whom it might apply accepts the duty of going on with the proof and details the entire transaction. In such a situation the presumption, inference or doctrine ceases to exist and all questions concerning the injury must be determined from the evidence unaided by the inference or doctrine of *res ipsa loquitur.*"

When a factual situation such as that described by the rule is shown to exist, *res ipsa loquitur* permits, but does not compel, the trier of the facts to draw a conclusion which natural reason might draw from the facts proven. *Res ipsa loquitur* is an evidentiary doctrine designed to enable the plaintiff to establish a case for the jury's consideration, where he has no means of proving specific acts of negligence.

If plaintiff, by his evidence, has established all the elements necessary to invoke the doctrine of *res ipsa loquitur*, and thereafter neither plaintiff nor defendant offers a detailed explanation of how the accident happened, the plaintiff thereby establishes a *prima facie*

case to be decided by the trier of the facts on the basis of which it may, or may not, find for the plaintiff, without proof of any specific negligent act. But if the defendant attacks plaintiff's case directly by going forward with a detailed explanation of the causes of the accident, then the jury may no longer infer negligence on the basis of the mere happening of the accident, but must consider all the evidence in determining whether or not defendant was negligent.

Since *res ipsa loquitur* is designed to meet the situation where no evidence of specific negligent conduct has been introduced, it follows that once such specific, detailed evidence is produced the reason for applying the doctrine no longer exists. Therefore, it may properly be said that, "In such a situation the . . . inference or doctrine ceases to exist . . . ." This means simply that the trier of the facts must consider the specific detailed evidence when introduced and cannot ignore it merely because it could have found for the plaintiff, through application of the doctrine of *res ipsa loquitur*, if no such detailed evidence had been introduced. With the *prima facie* case overthrown by a detailed explanation by the defendant, it is then for the jury to determine the proximate cause of the alleged injury from all the facts as shown by all the evidence.

It is also well settled in Indiana that in order for the doctrine to apply it must be made to appear that all instrumentalities causing the accident were under the exclusive control and management of the defendant. *Worster* v. *Caylor, supra* (1953), 231 Ind. 625, 110 N. E. 2d 337; *Indiana Harbor Belt R. Co.* v. *Jones* (1942), 220 Ind. 139, 148, 41 N. E. 2d 361; *Pittsburgh, etc. R. Co.* v. *Arnott, Admx.* (1920), 189 Ind. 350, 368, 126 N. E. 13; *Prest-O-Lite Co.* v. *Skeel* (1914), 182 Ind.

593, 599, 106 N. E. 365, Ann. Cases 1917A 474; *Wass* v. *Suter, supra* (1950), 119 Ind. App. 655, 84 N. E. 2d 734; *Kickels* v. *Fein* (1938), 104 Ind. App. 606, 617, 10 N. E. 2d 297; *Pittsburgh, etc. R. Co.* v. *Hoffman* (1914), 57 Ind. App. 431, 442, 107 N. E. 315; *Hook* v. *National Brick Co.* (1945), 7 Cir., 150 F. 2d 184.

An examination of the essential elements necessary to invoke the doctrine of *res ipsa loquitur* leads me to the conclusion that it does not apply in this case for the following reasons:

(1) There is a specific allegation of negligence— "that defendant negligently failed to give any adequate warning or signal of said approaching train in that defendant failed to cause the gates guarding said street crossing to be closed, and failed to cause a bell to ring or a light to flash on signal devices maintained at said crossing by defendant and defendant carelessly and negligently ran said train from the east upon its tracks without blowing a whistle, sounding a horn, ringing a bell, or without giving any signal or notice whatever of its approach and negligently and carelessly ran said train upon and against plaintiff's said automobile." *New York, Chicago & St. Louis R. Co.* v. *Henderson* (Ind. App., 1956), 137 N. E. 2d 744, 745.

There is, however, no general allegation of negligence in the complaint herein. In such a situation an instruction submitting a doctrine of *res ipsa loquitur* is reversible error. *New York, etc. R. Co.* v. *King* (1926), 85 Ind. App. 510, 514, 154 N. E. 508.

Here the alleged acts of negligence are specifically pointed out in the complaint. The specific act of which plaintiff-appellee complains is the *failure* of the gates and signals to work and not *why* they failed to work.

Here the plaintiff-appellee knew and was able to,

and did, detail and point out the specific alleged acts of negligence which caused her injury, and since she knew them, she was able to show them. The defendant-appellant was in no better position to do so than was plaintiff-appellee, and under these circumstances plaintiff was required to prove them, or some of them, "without the aid of the . . . [inference] which flows from the application of the doctrine of *res ipsa loquitur*." *New York, etc. R. Co.* v. *King, supra* (1926), 85 Ind. App. 510, 515, 154 N. E. 508; *Cf: Baltimore, etc. R. Co.* v. *Hill, Admr.* (1926), 84 Ind. App. 354, 372, 148 N. E. 489, 495.

(2) The thing which caused the injury here was the collision of the train engine with appellee's automobile. Both appellant and appellee were charged with certain degrees of care. The duty to avoid the collision which caused the alleged injury herein rested upon appellant and appellee with equal weight. *Pittsburgh, etc. R. Co.* v. *Hoffman, supra* (1914), 57 Ind. App. 431, 446, 107 N. E. 315.

Only one of the instrumentalities which caused the alleged injury herein was in the exclusive control of appellant. The automobile was exclusively in control of appellee.

The rule applicable here is stated in *Cadwallader* v. *Louisville, New Albany and Chicago Railway Co.* (1891), 128 Ind. 518, at page 520, 27 N. E. 161, as follows:

"Assuming in this case that the appellant had the right to presume that no train was approaching, by reason of the failure of the flagman to give notice, yet this did not excuse her from the use of her senses of sight and hearing in order to ascertain the fact for herself. With the use of these senses she was as well able to ascertain whether a train was approaching as the flagman at the

crossing, and a failure to use them was negligence."
See also: *Cleveland, etc. R. Co.* v. *Heine* (1902),
28 Ind. App. 163, 167, 62 N. E. 455; *Pitcairn* v.
*Honn* (1941), 109 Ind. App. 428, 439, 32 N. E. 2d
733.

We cannot presume here that if the appellant had
used due care the accident would not have happened.
The accident here is not such that we can say "in the
ordinary course of things would not have happened"
if appellant had done the things with which it is charged
as failing to do. Neither can we presume that appellee
would not have driven her automobile onto the crossing
if signals had been flashing and the gates working
properly. It is common knowledge that people have
done such things.

The facts here are different from the case of the
barrel falling out of the window.[1] There the barrel
was in the exclusive control of the defendant. There
it is conclusive that if the barrel had not fallen there
would have been no accident. That cannot be said about
the case at bar. It has been said appellee was in ex-
clusive control of the automobile. It is entirely pos-
sible, and there is ample evidence in the record to so
show, that her negligence in failing to use the degree
of care required of her under the circumstances may
not only have contributed to her injury, but may even
have been the proximate cause therefor.

It is stated in the majority opinion that Instruction
No. 6 was given "practically verbatim" in *Pittsburgh,
etc. R. Co.* v. *Boughton* (1924), 81 Ind. App. 129, 142
N. E. 869. However, the facts in that case are so dif-
ferent from the factual situation in this case that it,

---

1. *Byrne* v. *Boadle* (1863), 2 H. & C. 722, 159 Eng. Re-
print 299.

in my opinion, cannot be considered as authority for the giving of Instruction No. 6 in this case.

For the foregoing reasons I believe that the trial court committed reversible error in giving appellee's Instruction No. 6.

*Second:* There is sufficient evidence in this case to show contributory negligence on the part of appellee. When appellee left the bridge 65 feet from the crossing, the train was plainly in view 130 feet from the crossing and, with the train visible from the bridge, there is no escape from the proposition that it was visible to her at all times while she was on the bridge. Appellee testified that she looked and, in her testimony, she stated she did not look until she was almost to the track. Appellee further testified that she could have seen the train if it had been there, but she did not see it. She further testified that, if she had seen the train, she could have stopped and admits that she did not stop at any time in her approach to the crossing. Nowhere in her testimony did appellee ever testify that she listened for a train.

"It is well settled that railroad crossings are in themselves a warning of danger, and all persons approaching the same must exercise reasonable care for their own protection and, if they fail to do so and are thereby injured, they will be deemed guilty of contributory negligence; that travelers upon a public highway, in attempting to pass over a railroad crossing, must look and listen attentively for the approach of trains and, if a traveler, by the exercise of reasonable care, could have seen the approach of a train by looking in time to have avoided injury, by the use of reasonable efforts, it will be presumed, in case he is injured by a collision therewith, that he either did not look, or, if he did look, that he did not heed what he saw; . . . ." *New York, etc. R. Co.* v. *Leopold, Admr.* (1920), 73 Ind. App. 309, 315, 127 N. E. 298. See

also: *Waking* v. *Cincinnati, etc. R. Co.* (1920), 72 Ind. App. 401, 125 N. E. 799; *Chesapeake & Ohio Ry. Co.* v. *Patchett* (1933), 96 Ind. App. 220, 224, 184 N. E. 789; *Briske* v. *Village of Burnham* (1942), 379 Ill. 193, 39 N. E. 2d 976, 979.

Since I have concluded that the doctrine of *res ipsa loquitur* does not apply in the case at bar, I see no reason to discuss further the effect, if any, of contributory negligence upon the operation of the doctrine.

*Third:* Regardless of how we might eventually decide the question of *res ipsa loquitur*, this case, in my opinion, must be reversed because of the giving of appellee's Instruction No. 2 on the question of pain, suffering and mental anguish.

It is fundamental that a plaintiff cannot recover on matters on which there is no proof.

True, as the majority opinion says, the jury may infer mental and physical suffering which would naturally flow from a personal injury *but such must be alleged and proved.* In this case there is neither allegation of, nor proof of, mental anguish. As Judge Crumpacker said in the Appellate Court's opinion, "mental anguish, like any other element of recoverable damages, must be proven."

Inferences may be drawn to support evidence of mental anguish, but they cannot supply evidence which is entirely missing from the record.

The question here presented was settled in *Chicago, etc. R. Co.* v. *Blankenship* (1926), 85 Ind. App. 332, at page 341, 154 N. E. 44, 46, as follows:

"There is no allegation in the complaint of any 'mental anguish' suffered as being consequent upon said injury, and no damages were asked on account of such element, yet the court, at the request of appellee, in Instruction No. 7, told the jury that if it found for the plaintiff, in as-

sessing his damages, it should allow and compensate him not only for the physical pain and suffering which he had endured, but also for that which he would endure in the future, if any such pain and suffering were shown by the evidence, but that it should allow to him damages on account of 'mental anguish resulting from his physical injuries that he will sustain in the future.' It follows that the above instruction was, as to the element of 'mental anguish,' erroneous, and as we have no way by which we can determine that the jury did not follow the above instruction, and the presumption is that it did follow said instruction, and include in its verdict compensation for such mental anguish, the verdict, to that extent at least, must be deemed excessive, as including damages for an element not within the issues."

The majority opinion, as I read it, would set up a new rule on proving mental anguish and not only upset precedents of this and the Appellate Court which have stood for many years, but would leave the jury unrestrained to draw upon their own outside experience for authority to grant unlimited damages in such cases without such element of damages being either pleaded or proven.

I think the Appellate Court's opinion reached a just and correct result under the evidence in the record, and I would deny transfer.

## ON PETITION FOR REHEARING

ARTERBURN, J.—The appellant has filed a petition for rehearing in which it states it feels we have not complied with our duty in specifically disposing of the question raised by appellant's objections to appellee's Instruction No. 4.

In our opinion we stated:

"Appellant also contends that it is not guilty of negligence by reason of the failure to sound a

whistle on the locomotive because of an ordinance of the City of Fort Wayne . . ."

It is true we did not mention specifically Instruction No. 4 in considering the ordinance of the City of Fort Wayne and its application to the case.

For fear that we may not have been as specific as we should have been in disposing of the question, we shall be more specific. Appellant, in its petition for rehearing, states:

"The question properly raised, supported by proper objection in the trial court, was that appellee's Instruction 4 *entirely ignored the ordinance* and tells the jury that *appellant was required to whistle* in *violation of the ordinance* and that the failure to do so constituted negligence." (Our italics)

Instruction No. 4 complained of is as follows:

"While I have instructed you as to the duty and care of the Plaintiff in approaching the railroad crossing at Anthony Blvd. where she was injured, it was the duty of said Defendant to give timely warning, of the approach of its locomotive and train of cars on said track to the Plaintiff while approaching said street crossing, and this the defendant was bound to do, whether or not there was a statute or ordinance requiring signals to be given at said street crossing, and any failure to exercise this care required on the part of said Defendant at said street crossing, if shown, to exist in this case, was negligence on the part of said Defendant."

The objections made thereto by the appellant are as follows:

"Defendant objects to the giving of plaintiff's Instruction No. 4, for the reason that it presupposes that the plaintiff has been injured, which said fact is a fact to be determined by the Jury, and therefore, said instruction invades the province of the Jury, and for the further reason that there

is a whistle ordinance in the City of Fort Wayne, which is a part of the record, which requires locomotives not to sound their whistle."

Appellant throughout its brief assumes appellee sustained an injury and no contention is made on that point before us on appeal.

We find no statement in the instruction to the effect that it "tells the jury that appellant was required to whistle in violation of the ordinance." The fact is the instruction is in harmony with and should be read in connection with Instruction No. 7 tendered by the appellee and given by the court, to which the appellant made no objection. Instruction No. 7 reads as follows:

"I instruct you that there was in full force and effect in the City of Fort Wayne, Indiana, on the 10th day of November, 1953, an ordinance known as Railroad Ordinance of the City of Fort Wayne, Indiana, Section Three of which reads as follows:
" 'Section 3, Blowing Whistles:
" 'It shall be unlawful for any person running or controlling any locomotive to sound the whistle thereof or allow the same to be sounded within the corporate limits of the City, unless to prevent accidents which cannot otherwise be arrested.'
"I therefore instruct you that this ordinance relieves defendant from sounding its whistle as required by statute, unless, it is necessary to prevent accidents which cannot otherwise be arrested."

Instruction No. 4 states that the defendant has a duty to give "timely warning" regardless of whether or not an ordinance or statute *required* it at the street crossing. The instruction does not say a warning should be given even though *prohibited* by an ordinance. Instructions 4 and 7 are consistent and harmonious and should be construed together. 3 Lowe's Revision, Work's

Indiana Practice, Sec. 55.63, p. 487. Limiting our examination to the objections made and presented in the brief, the appellant has pointed out no error in the Instruction No. 4.

Our attention has been called to the fact that appellee died on May 6, 1956 after the appeal was submitted to the Appellate Court of this state, but before it was transferred to this court. Under Burns' §2-3235 no substitution of parties is necessary, and it is our opinion there is no reason for a change of parties upon a transfer of this cause to this court.

The petition for rehearing is denied.

Emmert, C. J., Landis and Achor, JJ., concur.

Bobbitt, J., dissents.

NOTE.—Reported in 146 N. E. 2d 531.
Rehearing denied 147 N. E. 2d 237.