**CINCINNATI INSURANCE CO. and Indiana Insurance Co., Appellants–Plaintiffs,**

v.

**Dr. T. Brandon DAVIS, Arbor Neuropsychological Assessment Clinics, Inc., and Culligan United States Filter, Appellees–Defendants.**

**No. 89A05–0602–CV–104.**

Court of Appeals of Indiana.

Feb. 2, 2007.

---

916

Donald K. McClellan, McClellan & McClellan, Muncie, IN, Attorney for Appellants.

David S. Christoff, Indianapolis, IN, Attorney for Appellee Dr. T. Brandon Davis.

Milford M. Miller, Miller Murphy & Miller, LLP, Fort Wayne, IN, Attorney for Appellee Culligan United States Filter.

## OPINION

CRONE, Judge.

### Case Summary

Cincinnati Insurance Company and Indiana Insurance Company (collectively, "the Insurers") appeal the trial court's entry of summary judgment for Dr. T. Brandon Davis ("Davis"), Arbor Neuropsychological Assessment Clinics, Inc. ("Arbor"), and Culligan United States Filter ("Culligan") on the Insurers' negligence claim. We reverse and remand.

## Issues

We restate the issues as follows:

I. Whether we have subject matter jurisdiction to consider the Insurers' appeal as to Culligan and Davis;

II. Whether the trial court erred in granting summary judgment for Davis;

III. Whether the trial court erred in granting summary judgment for Arbor; and

IV. Whether the trial court erred in granting summary judgment for Culligan.

## Facts and Procedural History

The facts most favorable to the Insurers, as the non-moving parties, indicate that Davis leased a suite in an office building in Richmond, Indiana, which he and his staff used only on Wednesdays. Davis had a Culligan water filtration system installed in his office. On Wednesday, March 28, 2001, a Culligan technician serviced the filtration system. At the end of the business day on Wednesday, June 6, 2001, Davis and his staff left and locked the office. On Sunday, June 10, 2001, water was found in the building's basement. The building's property manager, Janet Petzler, traced the leak to a broken saddle valve[1] attached to the Culligan filtration system in Davis's office. The filtration system was located in a cabinet, in which there was also a rectangular plastic waste-basket that was emptied only by Davis's staff. The water leak damaged property owned by the Insurers' insureds. The Insurers paid over $100,000 in claims and filed a negligence complaint against Davis and Culligan on July 26, 2002.

On January 31, 2005, Davis filed a motion for summary judgment in which he asserted that "[t]here exists no genuine issue of material fact with regard to [his] negligence resulting in the water damage that is the subject of this action" and that "any claim of res ipsa loquitur [2] asserted by the [Insurers] must fail because [he] did not have exclusive control over the instrumentality in question." Appellants' App. at 27.[3] In support of his motion, Davis designated the following findings of Culligan's expert, John Nogan:

1. The valve body was not tightened by a Culligan service technician during a service call on 28 March 2001.

2. The valve body was not tightened after the thread sealant had cured during the manufacturing process.

3. More likely than not the valve body was broken by being struck or bumped.

[Nogan's signature]

4. The mounting of the saddle valve on the water line copper tubing appears adequate.

5. The traces of copper on the upper surface of the clamp indicate that the valve assembly was only snug against

---

1. "A saddle valve is a valve used to supply liquid where a low volume, low pressure stream is required. The name is derived from the fact that it is mounted in such a way that it 'saddles' the line, mounting it from both sides." Wikipedia, the free Encyclopedia, *Saddle valve,* http://en.wikipedia.org/wiki/Saddle_valve (last visited Dec. 28, 2006).

2. *"Res ipsa loquitur* is a rule of evidence which permits an inference of negligence to be drawn based upon the surrounding facts and circumstances of the injury." *Rector v. Oliver,* 809 N.E.2d 887, 889 (Ind.Ct.App. 2004), *trans. denied.* We discuss this concept more fully *infra.*

3. The stamped page numbers of the Insurers' appendix are often illegible or even missing altogether.

the clamp surface. There was no scoring of either surface to suggest the valve body had been over-tightened.

*Id.* at 36. Davis also designated deposition testimony of the Insurers' expert, James Wood, who stated that an overtightening of the saddle valve was "one hypothesis that may be a valid explanation" for the separation of the valve's components. *Id.* at 38.

On February 10, 2005, the Insurers filed a memorandum and designated evidence in opposition to Davis's motion, including Petzler's deposition. Petzler opined that the water leak could have started on Wednesday, June 6, 2001, based on "the extensive amount of damage that there was." *Id.* at 57. Petzler also opined that the cause of the saddle valve break "was that someone had shoved the garbage can back in [the cabinet] and possibly kinked something, and it snapped." *Id.* With respect to the filter tubing and the wastebasket, Petzler stated, "It was real tight quarters. There wasn't any extra space in there. It was very tightly put in there." *Id.* The Insurers also designated the depositions of Wood and Nogan, who ruled out material failure and water pressure changes as possible causes for the saddle valve's breakage. *Id.* at 71, 72, 75.

After a hearing, on August 29, 2005, the trial court entered an order granting Davis's summary judgment motion. The trial court found that the Insurers had "designated no evidence tending to show negligence on the part of [Davis]" and had failed to establish the applicability of res ipsa loquitur. *Id.* at 1. The order does not indicate that it is a final appealable judgment.

On July 5, 2005, the Insurers filed an amended complaint adding Arbor as a defendant.[4] On September 12, 2005, Arbor filed a summary judgment motion that reiterated the arguments made in Davis's motion as to negligence and res ipsa loquitur. Arbor did not designate evidence in support of its summary judgment motion.

On September 19, 2005, Culligan filed a summary judgment motion in which it asserted that any claim of res ipsa loquitur "must fail for the same reason that it did not apply against Dr. Davis individually." *Id.* at 114. Culligan did not designate evidence in support of its motion. Culligan also filed a motion to exclude Wood's testimony. The trial court never ruled on Culligan's motion to exclude.

On September 23, 2005, the Insurers designated evidence in opposition to Arbor's motion and petitioned to certify Davis's summary judgment order for interlocutory appeal. On October 6, 2005, the Insurers designated evidence in opposition to Culligan's motion. On January 5, 2006, the Insurers filed a motion to reconsider Davis's summary judgment order, noting that although "the parties' respective legal memorandums dealt extensively with [the Insurers'] theory of *res ipsa loquitur* . . ., [the Insurers'] Complaint and Designated Evidence clearly demonstrates they were also proceeding on the theory of ordinary negligence." *Id.* at 123 (footnote omitted).

After a hearing, on January 30, 2006, the trial court entered an order granting Culligan's summary judgment motion "for the same reasons" it granted Davis's motion. *Id.* at 6. The order states, "As there remain no pending issues, this shall be considered a final, appealable order." *Id.* Also on that date, the trial court entered

4. Although the amended complaint does not so state, the record indicates that Davis is affiliated with Arbor in some capacity. Davis and Arbor were represented below by David Christoff, who filed a brief for Davis—but not for Arbor—in this appeal.

an order denying the Insurers' motion to reconsider Davis's summary judgment order. The order states, "As the Court has simultaneously herewith granted [Culligan's] Motion For Summary Judgment, there are no issues remaining and the granting of the Motion For Summary Judgment and Order denying the Motion To Reconsider shall be considered final, appealable Orders. The Motion To Certify Interlocutory Appeal is, accordingly, deemed moot." *Id.* at 5.

On February 7, 2006, the Insurers filed a notice of appeal as to the "final judgments" on Davis's and Culligan's summary judgment motions. Culligan's App. at 26. The Insurers did not request a transcript. *Id.* at 27. On February 10, 2006, the trial court clerk issued a notice of completion of clerk's record stating that the transcript was not yet completed. *Id.* at 28. This was clearly a scrivener's error, since no transcript had been requested. Our docket indicates that on March 6, 2006, the Insurers tendered to the clerk of courts a motion for a forty-five-day extension of time to file a brief; the clerk did not allow the motion to be filed because the notice of completion of transcript had not yet been received. *See* Ind. Appellate Rule 45(B)(1) (requiring that appellant's brief be filed no later than thirty days after "(a) the date the trial court clerk . . . issues its notice of completion of Clerk's Record if the notice reports that the Transcript is complete or that no Transcript has been requested; or (b) in all other cases, the date the trial court clerk . . . issues its notice of completion of the Transcript.").

On May 17, 2006, the Insurers filed a motion requesting a ruling on Arbor's summary judgment motion. On May 22, 2006, the trial court entered an order granting Arbor's motion "for the same reasons that summary judgment is granted in favor of [Davis] and against [the In-

sureds]." Appellants' App. at 7. The order further states that "as there now remain no pending issues, this shall be considered a final, appealable order." *Id.* On May 30, 2006, the Insurers filed an amended notice of appeal as to the "final judgments" on Davis's, Culligan's, and Arbor's summary judgment motions. *Id.* at 9. The Insurers did not request a transcript. *Id.* at 10. On May 31, 2006, the trial court clerk issued a notice of completion of clerk's record stating that the transcript was not yet completed. Again, this was a scrivener's error, since no transcript had been requested. On June 1, 2006, the trial court clerk issued an amended notice stating that no transcript had been requested. On June 23, 2006, the Insurers requested an extension of time in which to file their brief, which was granted up to and including August 4, 2006. The Insurers filed their brief on that date. Culligan and Davis filed their briefs on September 1 and October 4, 2006, respectively. Arbor did not file a brief. The Insurers filed their reply brief on October 20, 2006.

## Discussion and Decision

### I. Jurisdiction

We first address Culligan's argument that the Insurers did not timely file their brief following the trial court's summary judgment order dated January 30, 2006, and that we therefore have no subject matter jurisdiction to consider their appeal as to Culligan. Likewise, we would have no jurisdiction to consider the Insurers' appeal as to Davis, notwithstanding that Davis did not raise this argument in his brief. *See Georgos v. Jackson,* 790 N.E.2d 448, 451 (Ind.2003) ("[T]he lack of appellate jurisdiction can be raised at any time, and if the parties do not question subject matter jurisdiction, the appellate court may consider the issue sua sponte.").

"A party initiates an appeal by filing a Notice of Appeal with the trial court clerk

within thirty (30) days after the entry of a Final Judgment." Ind. Appellate Rule 9(A).

A judgment is a final judgment if:

(1) it disposes of all claims as to all parties; [or]

(2) the trial court in writing expressly determines under Trial Rule 54(B) or Trial Rule 56(C) that there is no just reason for delay and in writing expressly directs the entry of judgment (i) under Trial Rule 54(B) as to fewer than all the claims or parties, or (ii) under Trial Rule 56(C) as to fewer than all the issues, claims or parties[.]

Ind. Appellate Rule 2(H).

An appellant must file a brief no later than thirty days after:

(a) the date the trial court clerk . . . issues its notice of completion of Clerk's Record *if the notice reports that the Transcript is complete or that no Transcript has been requested;* or

(b) in all other cases, the date the trial court clerk . . . issues its notice of completion of the Transcript.

Ind. Appellate Rule 45(B) (emphasis added). The gist of Culligan's argument is that the trial court's January 2006 orders as to Culligan and Davis were final judgments and that the Insurers failed to file a brief within thirty days of February 10, 2006, the date the trial court clerk issued a notice of completion of clerk's record.

■ We disagree. We first observe that the January 2006 orders were not final judgments as defined by Appellate Rule 2(H). Notwithstanding their language to the contrary, they did not dispose of all pending issues, and the trial court did not "expressly determine" under either Trial Rule 54(B) or Trial Rule 56(C) that "there is not just reason for delay" and expressly direct entry of judgment "as to less than all the issues, claims or parties." Ind. Trial Rule 56(C). Trial Rule 54(B) and Trial Rule 56(C) contain nearly identical requirements for certifying an order as to fewer than all the claims or parties as a final judgment.[5] In *Georgos,* 790 N.E.2d 448, our supreme court explained with respect to Trial Rule 54(B) that

certification of an order that disposes of less than the entire case *must contain the magic language of the rule. This is intended to provide a bright line so that there is no mistaking whether an interim order is or is not appealable.* As we recently held in *Martin v. Amoco Oil Co.,* 696 N.E.2d 383 (Ind.1998), an order becomes final and appealable under Rule 54(B) "only by meeting the requirements of T.R. 54(B). These requirements are that the trial court, in writing, *expressly determine that there is no just reason for delay* and, in writing, expressly direct entry of judgment." *Id.* at 385.

*Id.* at 452 (emphases added). Here, the January 2006 orders as to Culligan and Davis do not contain the "magic language" of either Trial Rule 54(B) or Trial Rule 56(C).

■ We further observe that the trial court clerk's notice of completion of clerk's

---

5. *Compare* Ind. Trial Rule 54(B) ("A judgment as to one or more but fewer than all of the claims or parties is final when the court in writing expressly determines that there is no just reason for delay, and in writing expressly directs entry of judgment, and an appeal may be taken upon this or other issues resolved by the judgment; but in other cases a judgment, decision or order as to less than all the claims and parties is not final.") *with* Ind. Trial Rule 56(C) ("A summary judgment upon less than all the issues involved in a claim or with respect to less than all the claims or parties shall be interlocutory unless the court in writing expressly determines that there is not just reason for delay and in writing expressly directs entry of judgment as to less than all the issues, claims or parties.").

record in February 2006 stated that the transcript was not yet completed. Not only was this a scrivener's error, since the Insurers had not requested a transcript, but it also did not trigger the thirty-day deadline for filing an appellant's brief. *Cf.* Ind. Appellate Rule 45(B) (stating that appellant's brief must be filed no later than thirty days after "the date the trial court clerk issues its notice of completion of Clerk's Record *if the notice reports that the Transcript is complete"*) (emphasis added). After the trial court granted summary judgment for Arbor in May 2006, thereby disposing of the entire case, the Insurers filed an amended notice of appeal. The clerk filed an amended notice of completion of clerk's record stating that no transcript had been requested, and the Insurers timely filed a brief in August 2006. Having found no impediments to exercising our jurisdiction, we now consider the merits of the Insurers' appeal.[6]

### II. Summary Judgment for Davis

■ Our standard of review is well settled:

> Summary judgment is appropriate only where the designated evidentiary matter shows that there are no genuine issues as to any material fact and that the moving party is entitled to a judgment as a matter of law. When reviewing a grant of a motion for summary judgment, we stand in the shoes of the trial court. Once the moving party demonstrates, prima facie, that there are no genuine issues of material fact as to any determinative issue, the burden falls upon the non-moving party to come forward with contrary evidence. The non-moving party may not rest upon the

pleadings but must instead set forth specific facts, using supporting materials contemplated under Trial Rule 56, which show the existence of a genuine issue for trial. The party appealing the grant of summary judgment bears the burden of persuading this court that the trial court erred, but we still carefully scrutinize the entry of summary judgment to ensure that the non-prevailing party was not denied its day in court. We do not weigh the evidence but rather consider the facts in the light most favorable to the nonmoving party. We may sustain the judgment upon any theory supported by the designated evidence. The trial court here entered specific findings of fact and conclusions thereon. Although such findings and conclusions facilitate appellate review by offering insight into the trial court's reasons for granting summary judgment, they do not alter our standard of review and are not binding upon this court.

*Auburn Cordage, Inc. v. Revocable Trust Agreement of Treadwell,* 848 N.E.2d 738, 747 (Ind.Ct.App.2006). Summary judgment is rarely appropriate in negligence cases because issues of causation and reasonable care are more appropriately left for determination by the trier of fact. *Zubrenic v. Dunes Valley Mobile Home Park, Inc.,* 797 N.E.2d 802, 805 (Ind.Ct. App.2003), *trans. denied* (2004). "Nevertheless, a defendant is entitled to judgment as matter of law when undisputed material facts negate at least one element of plaintiff's claim." *Colen v. Pride Vending Serv.,* 654 N.E.2d 1159, 1162 (Ind.Ct. App.1995), *trans. denied* (1996).

---

**6.** To the extent Culligan suggests that an untimely filed brief is a jurisdictional defect requiring automatic dismissal, our appellate rules say otherwise. Appellate Rule 45(D) states that "[t]he appellant's failure to file timely the appellant's brief *may* subject the appeal to summary dismissal." (Emphasis added.) In other words, dismissal for an untimely appellant's brief is discretionary, rather than mandatory.

Here, the trial court entered summary judgment for Davis on the Insurers' negligence claim, finding that the Insurers had "designated no evidence tending to show negligence on the part of [Davis]" and had failed to establish the applicability of res ipsa loquitur. Appellants' App. at 2–3. Initially, we observe that "[t]he tort of negligence consists of three elements: (1) a duty owed to the plaintiff by the defendant; (2) a breach of that duty by the defendant; and (3) injury to the plaintiff proximately caused by that breach." *Pelak v. Ind. Indus. Servs., Inc.,* 831 N.E.2d 765, 769 (Ind.Ct.App.2005), *trans. denied* (2006). "Generally, the mere fact that an injury occurred will not give rise to a presumption of negligence." *Gold v. Ishak,* 720 N.E.2d 1175, 1180 (Ind. Ct.App.1999), *trans. denied* (2000).

The doctrine of res ipsa loquitur is a qualified exception to this general rule. *Id.* "The doctrine literally means 'the thing speaks for itself.'" *Rector v. Oliver,* 809 N.E.2d 887, 889 (Ind.Ct.App.2004), *trans. denied.* "It is premised upon an assumption that in certain instances an occurrence is so unusual that, absent a reasonable justification or explanation, those persons in control of the situation should be held responsible. While the occurrence oftentimes is 'unusual' in the sense · of being rare or bizarre, that is not a prerequisite to the application of the doctrine." *Shull v. B.F. Goodrich Co.,* 477 N.E.2d 924, 926 (Ind.Ct.App.1985) (citation omitted), *trans. denied.*

The doctrine operates on the premise that negligence, like any other fact or condition, may be proved by circumstantial evidence. To create an inference of negligence, the plaintiff must establish: (1) that the injuring instrumentality was within the exclusive management and control of the defendant or its servants, and (2) that the accident is of the type that does not ordinarily happen if those who have the management and control exercise proper care. In determining if the doctrine is applicable, the question is whether the incident more probably resulted from defendant's negligence as opposed to another cause. A plaintiff may rely upon common sense and experience or expert testimony to prove that the incident more probably resulted from negligence. To invoke *res ipsa loquitur,* the plaintiff must demonstrate that the defendant had exclusive control of the injuring instrumentality at the time of injury. Exclusive control is an expansive concept which focuses upon who has the right or power of control and the opportunity to exercise it. The existence of multiple defendants or the possibility of multiple causes does not automatically defeat the application of *res ipsa loquitur.*

*Rector,* 809 N.E.2d at 889–890 (citations omitted). "Whether the doctrine applies in any given negligence case is a mixed question of law and fact. The question of law is whether the plaintiff's evidence included all the underlying elements of res ipsa loquitur." *Gold,* 720 N.E.2d at 1181 (citation omitted).

The trial court made the following findings regarding the applicability of res ipsa loquitur:

[T]he accident now complained of *is* of the type that happens even if those who have the exclusive management and control exercise proper care. As [Davis] correctly points out, "... common sense informs that valves and other plumbing break and spring leaks for any number of reasons that do not involve negligence. Any homeowner can attest to this fact, and the Court can properly take judicial notice that this is the case." As [the Insurers] correctly point out in

their Brief, the court is to rely on "common sense and experience[.]"

This Court finds that [the Insurers] have failed to meet the requirements of the second prong of *res ipsa loquitur.* [The Insurers] have simply failed to prove that the accident is of the type that does not ordinarily happen if those who have the management and control exercise proper care.

[The Insurers] needing to establish both prongs of *res ipsa loquitur* and the Court finding that the second prong has not been established, the Court finds such issue to be dispositive and, accordingly, the Court does not address the issue of exclusive control as it relates to res ipsa loquitur.

Appellants' App. at 3 (citation omitted).

■■■ We remind all concerned that as the party seeking summary judgment, Davis had the burden of establishing the absence of a genuine issue of material fact as to a determinative issue; only then were the Insurers required to come forward with contrary evidence. *Jarboe v. Landmark Cmty. Newspapers of Ind.,* 644 N.E.2d 118, 123 (Ind.1994). Merely alleging that the plaintiff has failed to produce evidence on a determinative issue is insufficient to entitle the defendant to summary judgment under Indiana law. *See id.* Davis's own evidence suggests that the water leak was caused by a bumping, a striking, and/or an overtightening of the saddle valve—in other words, by acts that suggest a failure to exercise reasonable care.[7] The Insurers designated similar evidence, as well as evidence indicating that the leak was not caused by material failure or a change in water pressure, thus further supporting the inference that the inci-

dent more probably resulted from negligence as opposed to another cause. As such, we conclude that Davis was not entitled to summary judgment on the basis cited by the trial court. *See New York, Chicago & St. Louis R.R. Co. v. Henderson,* 237 Ind. 456, 470, 146 N.E.2d 531, 539–40 (1957) ("There is no reason in law why a plaintiff may not offer such evidence as may be available tending to show specifically the items of negligence and still rely upon the inference also permitted under *res ipsa loquitur.* A number of different causes or inferences may be thus left to the final determination of the triers of the facts.").

Viewed most favorably to the Insurers, the designated evidence also suggests that the saddle valve began leaking at a time when Davis had exclusive control over the water filtration system. *See* Appellants' App. at 57 (Petzler's testimony that the leak could have started on Wednesday, June 6, 2001, based on "the extensive amount of damage that there was."). To the extent the evidence suggests that Culligan had exclusive control over the filtration system during the March 2001 service call and that its alleged overtightening of the valve might have contributed to the leak, we reiterate that "[t]he existence of multiple defendants or the possibility of multiple causes does not automatically defeat the application of *res ipsa loquitur.*" *Rector,* 809 N.E.2d at 890; *see also Henderson,* 237 Ind. at 472–73, 146 N.E.2d at 541 (stating that the drawing of an inference of negligence "does not fix the proximate cause of the accident, but the jury must still determine the proximate cause, even though such permissible inference of negligence is drawn. The doctrine

---

7. In his summary judgment motion, Davis did not address the existence, let alone the nature, of any duty of reasonable care it owed the insureds. The Insurers claim that Davis

had a duty to maintain the water filtration system in a safe condition. Appellants' Br. at 12.

of *res ipsa loquitur* is not a rule which fixes the proximate cause of an injury, but only a rule of evidence allowing a permissible inference of negligence under a certain set of facts."). In sum, we conclude that a genuine issue of material fact remains as to the applicability of res ipsa loquitur in this case.

■ Finally, we address Davis's argument, made below and on appeal, that he "is entitled to summary judgment because the Insurers did not meet their burden to demonstrate" that he caused the water damage suffered by the insureds. Davis's Br. at 2.[8] It is true, as Davis observes, that

> [a]n essential element in a cause of action for negligence is the requirement of a reasonable connection between a defendant's conduct and the damages which a plaintiff has suffered. This element requires, at a minimum, causation in fact—that is, that the harm would not have occurred "but for" the [defendant's] conduct. The "but for" analysis presupposes that, absent the tortious conduct, a plaintiff would have been spared suffering the claimed harm.
>
> Hence, in order for the plaintiff to carry her burden of proof, she must present evidence of probative value based on facts, or inferences to be drawn from the facts, establishing both that the wrongful act was the cause in fact of the occurrence and that the occurrence was the cause in fact of her injury. The plaintiff's burden may not be carried with evidence based merely upon supposition or speculation. Standing alone, evidence establishing a mere possibility of cause or which lacks reasonable certainty or probability is not sufficient evidence by itself to support a verdict. Civil liability may not be predicated purely upon speculation.

*Daub v. Daub,* 629 N.E.2d 873, 877 (Ind. Ct.App.1994) (citations omitted), *trans. denied.*

In this case, however, we are not concerned with whether the Insurers carried their burden of proof at trial, but rather with whether Davis demonstrated the absence of a genuine issue of material fact as to whether he caused the water leak that damaged the insureds' property. *See Jarboe,* 644 N.E.2d at 123. We conclude that he did not. Curiously, Davis himself points to Nogan's opinion that "[m]ore likely than not the valve body was broken by being struck or bumped." Appellants' App. at 36. This opinion, especially when coupled with Petzler's unchallenged opinion that the filtration system was struck and damaged by the adjacent wastebasket, establishes a genuine issue of material fact as to whether Davis caused the leak. We therefore reverse the trial court's entry of summary judgment for Davis and remand for further proceedings.

### III. Summary Judgment for Arbor

Arbor has not filed a brief in this appeal, and its specific affiliation with Davis is unclear. In its summary judgment motion, Arbor relied on Davis's successful arguments, and the trial court granted the motion accordingly. Given that Davis's arguments have proved unsuccessful on appeal, we reverse the trial court's entry of summary judgment for Arbor and remand for further proceedings. *See Deckard v. Deckard,* 841 N.E.2d 194, 199 (Ind.Ct.App. 2006) (stating that when appellee fails to file a brief, we may reverse on a showing of prima facie error).

### IV. Summary Judgment for Culligan

In its summary judgment motion, Culligan asserted that "[a]ny claim of *Res Ipso*

---

**8.** Davis failed to number the pages of his brief as required by Indiana Appellate Rule 43(F).

[sic] *Loquitur* asserted by [the Insurers] against Defendant Culligan must fail for the same reason that it did not apply against Dr. Davis individually" and that "[t]herefore, there is no genuine issue of material fact as to any negligence by Culligan, resulting in the injuries to [the Insureds]." Appellants' App. at 114. Culligan did not designate evidence in support of its motion, and the trial court granted Culligan's motion "for the same reasons" it granted Davis's motion. *Id.* at 6.

■ On appeal, the Insurers agree with Culligan's assertion that res ipsa loquitur does not apply to Culligan. They point out, however, that Culligan failed to designate evidence negating their "theory of ordinary negligence." Appellants' Br. at 16. According to the Insurers, they alleged that "Culligan failed to properly maintain the water purification system in [Davis's] office and designated evidence that a possible over tightening of the saddle valve assembly may have been responsible for the valve leaking." *Id.* (citing Wood's deposition in Appellants' App. at 67).[9]

■ Culligan challenges the sufficiency of Wood's opinion testimony to this effect[10] and directs us to its motion to exclude that testimony. The trial court never ruled on that motion, however, and we decline to do so for the first time on appeal. Although the foundation for Wood's opinion does appear meager, the fact remains that the trial court did not exclude Wood's testimony and that Culligan failed to demonstrate the absence of a genuine issue of material fact as to its causation of the insureds' damages. Therefore, we must reverse the trial court's entry of summary judgment for Culligan and remand for further proceedings.[11]

Reversed and remanded.

BAKER, J., and VAIDIK, J., concur.

---

9. Although the Insurers did not make this specific allegation in either of their complaints, Culligan does not challenge this statement on appeal.

10. We note that portions of Wood's testimony to which Culligan refers were not designated by any of the parties on summary judgment and therefore may not be considered on appeal. *See AquaSource, Inc. v. Wind Dance Farm, Inc.,* 833 N.E.2d 535, 539 (Ind.Ct.App. 2005) (stating that "we review only the designated evidentiary material in the record").

11. Given our resolution of this issue, we deny as moot the Insurers' motion to strike certain portions of Culligan's brief and appendix.